UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BRUM and MICHAEL CAMERO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKETSOURCE, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS MARYLAND MARKETSOURCE, INC., a Maryland corporation; ALLEGIS GROUP, INC., a Maryland corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:17-cv-241-JAM-EFB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STIKE** |

Jennifer Brum ("Brum") and Michael Camero ("Camero") (collectively "Plaintiffs") have sued MarketSource, Inc., and Allegis Group, Inc., (collectively "Defendants") for various California Labor Code and Unfair Competition Law violations.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 3, 2017.

1

After Defendants partially prevailed on a motion to dismiss, Plaintiffs filed their Second Amended Complaint ("SAC"). Defendants now seek to strike allegations from the SAC. For the reasons set forth below, Defendants motion is GRANTED in its entirety.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants provide retail sales personnel to dozens of Target Mobile kiosks throughout California. SAC ¶ 26. Brum worked as a "Wireless Team Lead" at several Target stores in and around Stockton, California. SAC ¶ 3. Camero worked as a "Target Mobile Manager" at two Target stores in San Diego, California. SAC ¶ 4.

Plaintiffs allege Defendants violated overtime, meal, and rest period laws and did not properly report wage statements. SAC at ¶¶ 13-19, 21-27. Plaintiffs also contend Defendants required all new hires to take drug tests as a condition of employment without paying them for the time to travel to and from the drug testing facility and take the test, and without reimbursing them for travel expenses. SAC ¶ 29.

Plaintiffs seek to represent one class and one subclass, but have not yet filed a motion for class certification. SAC ¶¶ 20, 21.

The Court previously granted in part and denied in part Defendants' motion to dismiss. Order, ECF No. 15. The Court struck Plaintiffs' drug testing allegations—with leave to amend—because Plaintiffs' opposition to the motion relied on facts Plaintiffs failed to allege in the FAC. Order at 7, 13.

Plaintiffs timely filed their SAC. ECF No. 16. Now, Defendants move to strike the amended allegations concerning compensation and reimbursement for the drug testing. Additionally, Defendants move to strike Plaintiffs' new allegations regarding compensation for time spent filling out paperwork.

## II. OPINION

### A. Judicial Notice

Defendants seek judicial notice of an email dated January 8, 2017, Exh. A, ECF No. 18-3, pursuant to either Federal Rule of Civil Procedure 201(b) or the doctrine of incorporation by reference.

Under Rule 201, the Court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). The contents of the January 8th email do not meet these parameters and are not an appropriate subject for judicial notice under Rule 201.

Under the doctrine of incorporation by reference, the court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the [motion]." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

The January 8th email does appear central to Plaintiffs' claim and is referenced, though not explicitly, in the SAC. In support of their liability theory, Plaintiffs allege—and argue in their opposition to the motion to strike, see Opp'n at 5-9—that

Defendants exercised control over the circumstances surrounding the drug testing. The January 8th email communicates the drug testing instructions to the new hires, which Plaintiffs refer to in paragraphs 29 and 74 of the SAC. Plaintiffs' argument that the email is not relevant to their claims is disingenuous, as Plaintiffs' opposition to the motion to strike largely relies on the control Defendants allegedly exerted over the drug testing, as shown by the email.

Defendants argue that Plaintiffs cannot contest the email's authenticity because Plaintiffs produced the email in discovery. See RFJN at 2. Plaintiffs admit they did so. Opp'n to RFJN at 2. Plaintiffs do, however, contest the email's authenticity, pointing out that the email has not been authenticated by deposition or affidavit. Opp'n to RFJN at 2–3. Plaintiffs are correct. While the email appears to be authentic and Defendants could easily lay a foundation for its authenticity, no such foundation exists in Defendants' motion papers. Therefore, the Court may not take judicial notice of this email over Plaintiffs' opposition in deciding the present motion.

B. Analysis

Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.

"Motions to strike are generally regarded with disfavor[.]" In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). "A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the

4

litigation." Contreras, ex rel. Contreras v. Cnty. of Glenn, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010) (citation omitted). In deciding the motion, the Court must view the pleadings in the light most favorable to the nonmoving party. Baker v. United Natural Foods, Inc., No. 2:15-cv-953-JAM-EFB, 2015 WL 5601362, at *1 (E.D. Cal. Sep. 22, 2015).

### 1. Reimbursement For Drug Testing

Defendants' motion turns on whether Plaintiffs sufficiently allege they were employees when they underwent Defendants' required drug testing. If Plaintiffs were not employees at that time, then those allegations are immaterial to their claims. Defendants argue Plaintiffs were merely "prospective employees" at testing time and Defendants therefore had no obligation to pay them wages or reimburse mileage. Mot. at 6-7. Plaintiffs argue the SAC's allegations demonstrate "the drug-tested individuals were engaged, thereby creating a common-law employment relationship, and were under Defendants' control when they were tested." Opp'n at 5. They specifically point to the allegation in paragraph 29 of the SAC as establishing the employment relationship between the parties:

> Upon being hired, Defendants send newly hired employees a system-generated e-mail notification with "Welcome to Market Source" in the subject line that provides, "Congratulations on your new position with the MarketSource team!" The e-mail further provides "Now that you have accepted your position, I've created a timeline of what you can expect in the next several days leading up to your official start date with us."

SAC at ¶ 29. These new allegations tend to support Plaintiffs' argument that they had accepted employment with Defendants.

But, Plaintiffs' allegations contain their Achilles heel:

5

"Defendants require that all new hires undergo mandatory drug testing as a <u>condition</u> of employment." SAC at ¶ 29 (emphasis added); <u>see also</u> ¶ 74. The drug testing is one of the "Immediate Next Steps" the new hires complete prior to their "official start date." SAC at ¶ 74. Plaintiffs thus admit their employment was conditioned upon completing a drug test, thereby undermining the "engagement" theory central to their opposition. Plaintiffs fail to explain how an employment agreement formed between the parties prior to fulfillment of this condition. Plaintiffs' allegations do not establish such an agreement.

This conclusion does not terminate the inquiry. "In determining the nature of the employment relationship, a primary inquiry of California courts is whether the alleged employer exercised or had the right to exercise control over the alleged employee." <u>Gunawan v. Howroyd-Wright Employment Agency</u>, 997 F. Supp. 2d 1058, 1063 (C.D. Cal. 2014). Defendants assert there is no authority suggesting that employers must compensate prospective employees for time spent in pre-employment activities. But, this argument begs the question of whether Defendants exercised a sufficient degree of control over the prospective employees' drug testing to establish an employment relationship at that time.

The <u>Gunawan</u> decision is instructive on this issue. In that case, Ms. Gunawan applied for employment with a temporary staffing agency ("KForce") and, after interviewing with KForce, went out for an interview that KForce arranged with an outside employer ("TRG"). <u>Gunawan</u>, 997 F. Supp. 2d at 1061. KForce scheduled the interview, modified Ms. Gunawan's resume, and

communicated with TRG.  Id.  After TRG decided to hire Ms. Gunawan for a temporary assignment, she completed employment paperwork with KForce and became a KForce employee.  Id.  Ms. Gunawan later sued KForce, seeking compensation for the time she spent interviewing with TRG, "prior to the commencement of her formal employment relationship with KForce."  Id. at 1062.  After noting the dearth of authority on this question, the Gunawan Court grappled with how to apply the California Supreme Court's Martinez test to determine whether KForce was Ms. Gunawan's employer during the interview. It wrote:

> Martinez expounded on the definition of "employer" under California's wage and hour laws, holding that "to employ" has three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship."  The court's test, however, is not easily translated outside of the factual context in which it was developed . . . [it is most applicable in answering] whether the defendants in the case could be considered joint employers under the law.  There was no question whether the employees in Martinez were employees, nor whether they had performed compensable work. . . .  Here, in the context of determining whether an individual is an employee at all, the test is less directly applicable. . . .  At its core, the Martinez test suggests that an employer is an individual that has the ability to control the terms and conditions of an individual's work, or that has such control over an individual so as to have the ability to permit or prevent that individual from working.

Id. at 1064 (quoting Martinez v. Combs, 49 Cal.4th 35 (2010)). The Gunawan court concluded that Ms. Gunawan was not under KForce's control at the time of the interview because she could have opted not to attend the TRG interview without precluding other assignments through KForce, and because KForce had little control over the substance of the interview itself.  Id. at 1063.

7

The facts that KForce scheduled the interview and controlled communications between the parties did not persuade the court: "That she chose [] to utilize KForce's service does not transform Ms. Gunawan from an applicant for employment to an employee." Id. at 1064.

Plaintiffs argue that Gunawan is in the minority, but Plaintiffs' alternative cases are not persuasive. First, the court in Sullivan v. Kelly Services, another staffing agency case, did not consider whether or not the plaintiff was an employee, but, instead, considered whether the time she spent interviewing with outside employers was compensable work time. No. C 08-3893 CW, 2009 WL 3353300 (N.D. Cal. Oct. 16, 2009). The Sullivan court stated Ms. Sullivan was the defendant's employee in the factual background section of the order. Id. at *1 ("Plaintiff's employment relationship with Defendant began on March 16, 2006, which was her first day of her first temporary assignment with Defendant's customer[.]"). Thus, the Sullivan decision is not instructive. The Betancourt court, on the other hand, did analyze the plaintiff's employee status when he went out on interviews. Betancourt v. Advantage Human Resourcing Inc., No. 14-CV-01788-JST, 2014 WL 4365074 (N.D. Cal. Sep. 3, 2014). Finding Sullivan more persuasive than Gurawan, it determined the defendant exercised sufficient control over the interview process to establish an employer-employee relationship. Id. at *4–6. The Betancourt opinion, too, is of limited value to this Court. First, the plaintiff in that case had completed a "new hire" orientation, signed a form acknowledging that he and the defendant were entering into an employment arrangement, and

8

completed traditional employment paperwork with defendant prior to interviewing with outside employers. Id. at *1.  Hence, the "prospective" employee versus employee issue was not framed so poignantly for that court.  Second, the Betancourt court bewilderingly cites Sullivan as "holding an employment relationship was created" between the plaintiff and defendant in that case; but, the Sullivan opinion contains no such holding because the employment relationship was not in dispute. Id. at *3.  In light of these deficiencies, Sullivan and Betancourt have little sway over this Court's analysis.

Each of the above-cited cases is distinguishable from the present circumstances.  A staffing agency that manages one's interviews and work assignments and controls all communications with outside employers exhibits considerably more control over its (prospective) employees than an employer who conditions an offer of employment on completion of a drug test.  The narrow question here is whether the facts that a prospective employer picked the time, date, and location for, and the scope of, a drug test required in order for one to commence employment exhibit enough control over a prospective employee to establish an employment relationship.  Plaintiff has not offered any legal support for this seemingly novel proposition.  The Court thus finds these allegations insufficient to establish an employment relationship at the time of Plaintiffs' drug testing.

        2. <u>Reimbursement Under the UCL</u>

Plaintiffs seek relief under California's Unfair Competition Law ("UCL") for Defendants' failure "to pay the costs of mandatory physical examinations and drug testing in violation of

9

California Labor Code section 222.5." SAC at ¶ 121(e). Under the statute, an employer may not "require any prospective employee or applicant for employment to pay[] any fee for, or cost of, any pre-employment medical or physical examination taken as a condition of employment[.]" Cal. Labor Code § 222.5.

Defendants argue that, based on the plain language of the statute, "cost" does not include compensation for the time involved in taking the exam, traveling to and from the exam, or for travel mileage. Mot. at 11. Plaintiffs respond that there is no case law supporting Defendants' interpretation and suggests the more reasonable interpretation of "cost" would accord with Labor Code section 2802, which requires reimbursement for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" Opp'n at 10. According to Plaintiffs, an employee may recover reimbursement for mileage under section 2802. Id. (citing Vasquez v. Franklin Mgmt. Real Estate Fund, Inc., 222 Cal. App. 4th 819 (2013)).

Defendants have the stronger argument. The two Labor Code sections have substantially distinct wording and the Court will not read the sections to carry the same meaning without authority militating such an interpretation. That section 222.5 is limited to "cost" and section 2082 includes "all necessary expenditures or losses incurred" supports a narrower reading of the statute. Accordingly, Plaintiffs' drug testing allegations cannot support their UCL claim.

### 3. Paperwork Allegations

Defendants argue that Plaintiffs' allegations in support of their new theory of liability should be stricken because the Court's previous order only granted leave to amend the drug testing reimbursement allegations. Mot. at 13. Plaintiffs respond that Defendants read the Court's order too narrowly, contending that "leave to amend was granted as they relate to the causes of action regarding off-the-clock work such as drug testing" and they could permissibly amend their allegations to add this additional theory in support of their second cause of action for unpaid minimum wages and eighth cause of action for unlawful business practices. Opp'n at 12.

The Court granted Defendants' motion to strike Plaintiffs' allegations regarding reimbursement for drug testing with leave to amend. See Order at 13:27-28. Plaintiffs' new allegations exceed the scope of the Court's leave and are ordered stricken. See Freeney v. Bank of Am. Corp., No. CV 15-02376 MMM (PJWx), 2015 WL 4366439 (C.D. Cal. July 16, 2015) ("Plaintiffs may not plead additional claims, add additional parties, or add allegations that are not intended to cure the specific defects the court has noted. Should any amended complaint exceed the scope of leave to amend granted by this order, the court will strike the offending portions under Rule 12(f)."). Because these new allegations are stricken, the Court need not consider their merit and will not do so at this time.

### C. Sanctions

In their Reply, Defendants suggest that Plaintiffs used a condensed font to circumvent this Court's Order re Filing

Requirements, ECF No. 2-2. Rep. at 1.  The Court has reviewed Plaintiffs' filing.  It appears that Plaintiffs used a standard 12 point font with condensed character spacing (-0.2), though it is not clear how many pages this saved Plaintiffs.  The Court declines to issue sanctions at this time.  Henceforth, however, all memoranda submitted in this action shall conform to a 12 point font size and standard (zero) character spacing.

### III.  ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Strike in its entirety.  Plaintiffs' allegations concerning the drug testing and paperwork are ORDERED stricken from the Second Amended Complaint.  Because Plaintiffs have already had an opportunity to amend the Complaint and further amendment appears futile, leave to amend is not permitted.  Defendants shall file their Answer to the Second Amended Complaint within twenty days of this Order.

IT IS SO ORDERED.

Dated: October 26, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE