UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BRUM and MICHAEL CAMERO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKETSOURCE, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS MARYLAND MARKETSOURCE, INC., a Maryland corporation; ALLEGIS GROUP, INC., a Maryland corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:17-cv-241-JAM-EFB<br><br>ORDER |

This case was before the court on April 4, 2018, for hearing on plaintiffs' motions to compel defendants to provide further responses to plaintiffs' discovery requests. ECF Nos. 34, 35. Attorney Arnab Banerjee appeared on behalf of plaintiffs and attorney Kevin Sullivan appeared on behalf of defendants. At the hearing, the parties were directed to submit additional briefing addressing the burden of producing the disputed discovery. The supplemental briefing has been submitted. ECF Nos. 43-47. For the reasons discussed below, plaintiffs' motions to compel are granted.

/////

I. Background

Plaintiffs Jennifer Brum and Michael Camero bring this putative class action against defendants MarketSource Inc. ("MarketSource") and Allegis Group, Inc. ("Allegis"), alleging claims for violations of the California Labor Code and California Business and Professions Code §§ 17200, *et seq*. ECF No. 16. The action proceeds on plaintiffs' second amended complaint ("SAC"), which alleges as follows:

MarketSouce is a wholly-owned subsidiary of Allegis. *Id*. ¶ 17(c). Defendants are a nationwide sales and marketing company, providing personnel and services to companies throughout the United States. *Id*. ¶ 26. Among other things, defendants provide retail sales personnel to dozens of Target Mobile kiosks throughout California. *Id*. Plaintiff Brum worked as a Wireless Team Leader at several Target stores in and around Stockton (*id*. ¶ 3), while plaintiff Camero worked as a Target Mobile Manager at two Target stores in San Diego (*id*. ¶ 4). Plaintiffs claim that defendants violated overtime, meal, and rest period laws, and failed to properly report wage statements. *Id*. ¶¶ 13-19, 21-27. They further allege that defendants required new hires to take drug tests and complete paperwork without payment for the time required to complete such tasks and without reimbursement for related travel expenses. *Id*. ¶ 29.

Plaintiffs seeks to assert claims on behalf of one class and one subclass. The SAC defines the proposed class as:

> All persons who worked for Defendants as nonexempt, hourly-paid Account Sales Representatives, including, but not limited to Mobile Managers, Wireless Team Leads, Wireless Team Members, or similar positions, at retail stores in California within four years prior to the filing of this complaint until the date of trial ("Class").

*Id*. ¶ 20.

The proposed subclass is defined as:

> All persons who worked for Defendants as nonexempt, hourly paid Account Sales Representatives, including, but not limited to Mobile Managers, Wireless Team Leads, Wireless Team Members, or similar positions, at retail stores in California, within one year prior to the filing of this complaint until the date of trial ("Subclass").

*Id*. ¶ 21.

/////

2

Plaintiffs move to compel defendants to produce discovery related to members of the proposed class and subclass. ECF Nos. 34, 35. Specifically, plaintiffs seek to compel defendants to provide the name, position, and contact information for proposed class members (Interrogatory No. 1) and to produce timekeeping data, payroll data, and itemized wage statements for the putative class members (Request for Production of Documents Nos. 11-13).

II. <u>Legal Standards</u>

Federal Rule of Civil Procedure ("Rule") 26(b) provides that the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Further, relevant information need not be admissible if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Ibanez v. Miller*, No. CIV S-06-2668 JAM EFB P, 2009 WL 1706665, at *1 (E.D. Cal. Oct. 22, 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

All class actions in federal court must meet the prerequisites of Rule 23(a). There are four prerequisites: numerosity (the class must be so numerous that joinder of all members individually is "impracticable"); commonality (there must be questions of law or fact common to the class); typicality (the claims or defenses of the class representative must be typical of the claims or defenses of the class); and adequacy of representation (the person representing the class must be able fairly and adequately to protect the interests of all members of the class). Fed. R. Civ. P. 23(a)(1)-(4). Additionally, the action has to fit into one of the "types of class actions" delineated in Rule 23(b). *See* Fed. R. Civ. P. 23(b).

When a purported class action is filed, the court must determine whether the purported class should be allowed to proceed as such via a class certification motion. Fed. R. Civ. P. 23(c)(1). The party seeking class certification bears the burden of establishing the certification requirements of Rule 23. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982) (a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)

have been satisfied."). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *see also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) ("Prior to class certification under Rule 23, discovery lies entirely within the discretion of the Court.").

III. Discussion

The parties' dispute here primarily centers over whether plaintiffs should be permitted to conduct statewide class discovery on issues of time records, payroll data, wage statements, and contact information for putative class members. Defendants contend that plaintiffs are not entitled to class discovery because they have failed make "a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." ECF No. 38 at 21; ECF No. 37 at 22.[1] Instead, defendants contend that discovery should be limited to the locations where the individual plaintiffs worked.

Some district courts have required a plaintiff to make a prima facia showing of company-wide violations prior to allowing discovery related to locations where the plaintiff never worked. *See Nguyen v. Baxter Health Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) ("Because Plaintiff has failed to produce any evidence of company-wide violations, and Defendant admittedly has produced contrary evidence showing company-wide policies consistent with California law, there is no basis at this time to require discovery beyond the Irvine facility where Plaintiff worked."); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at * 8 (S.D. Cal. June 12, 2013) (limiting discovery to locations where plaintiff worked based on plaintiff's failure to provide evidence of companywide violations); *Martinet v. Spherion Atl. Enters., LLC.*, 2008 WL 2557490 (S.D. Cal.

---

[1] Additionally, Allegis contends that it does not possess the discovery plaintiffs seek because it did not employ plaintiffs or any of the putative class members. ECF No. 37 at 6-7. It contends that the information sought is maintained by MarketSource, a subsidiary of Allegis, and that plaintiffs must obtain the discovery they seek from MarketSource. As stated at the hearing, if Allegis has determined that it does not possess any responsive documents after conducting a reasonable and diligent search, it shall provide plaintiffs with a verification, signed under penalty of perjury, attesting that it does not have any responsive documents in its custody or control.

4

June 20, 2008) (limiting discovery to offices where plaintiff worked until plaintiff provided evidence of companywide violations); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Col. 1998) (same); *Franco v. Bank of Am.*, 2009 WL 8729265 (S.D. Cal. Dec. 1, 2009) ("While the allegations in plaintiff's declaration support his request for contract information of the approximately 100 current and former employees in the branch offices where Plaintiff worked, it does not support his request for the contact information of the approximately 27,000 such employees located through California."); *see also Montolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion."); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (same).

While imposing such a condition is not an abuse of discretion, there is no requirement that a prima facie showing be made prior to seeking statewide class discovery. *See Kaminske v. JP Morgan Chase Bank N.A.*, 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("[T]here is nothing in *Doniger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing that was approved in *Doniger* and *Montolete*."); *Robinson v. Chefs' Warehouse*, 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017) ("Plaintiffs are not necessarily required to make a prima facie showing in order to obtain information for the putative class."). Indeed, the Ninth Circuit has stated that "[o]ur cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and some discovery will be warranted." *Vinole*, 571 F.3d at 942 (9th Cir. 2009). The *Vinole* court further observed that while district courts retain wide discretion in deciding whether to permit class discovery, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action is maintainable." *Id.* (quoting *Doninger*, 564 F.2d at 1313).

In the instant case the court finds that the more appropriate course is to permit the requested class discovery. The requests at issue seek information relevant to numerosity, commonality, and typicality, which plaintiffs must establish to certify the proposed class and subclass. Furthermore, defendants are the parties in possession and control of the requested information, and absent an order compelling them to produce the requested discovery, plaintiffs will not be able to obtain evidence necessary for a class certification motion. Accordingly, the court finds that plaintiffs are entitled to the statewide class discovery.

Defendants further argue that even if statewide discovery is permitted, it should be allowed to exclude information from putative class members that signed an arbitration agreement. ECF No. 38 at 23-24. To support this proposition, defendants cite to *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 574 (S.D. Cal. 2013) and *Pablo v. Servicemaster Global Holdings, Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011). Both cases address the sufficiency of a motion for class certification. *Balasanyan*, 294 F.R.D. at 574 ("Nordstrom was engaging in a standard practice that many companies engage in when hiring new employees. Accordingly, the court holds that new employees who signed the [arbitration agreement] upon becoming employed by Nordstrom may be properly excluded from the class."); *Servicemaster Global Holdings, Inc.*, 2011 WL 3476473 at *2 (denying class certification where "the evidence currently before the [c]ourt supports an inference that a significant number [of plaintiffs signed arbitration agreements], and that a significant portion of this litigation would be devoted to discovering which class members signed such agreements and enforcing those agreements, rather than to the resolution of plaintiffs' legal claims."). They do not, however, address the scope of discovery, nor hold that a plaintiff is not entitled to discovery related to proposed class members who have signed an arbitration agreement. The issue of whether an individual who signed an arbitration agreement should be excluded from the class will need to be addressed on a motion for class certification, not a discovery motion. Accordingly, plaintiffs should be permitted to discover information regarding all class members, including those that signed an arbitration agreement.

The parties agree that if statewide discovery is ordered, defendants, rather than producing documents for each class member, should only be required to produce a sample of the discovery

1  sought. ECF No. 38 at 18, 24-25; *see Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, at
2  *2 (N.D. Cal. Jan. 21, 2014)("The right balance is struck by providing Plaintiffs' discovery of a
3  statistically significant sample. In the specific context of class action discovery, sampling
4  advances the goal of proportionality advanced under" Rule 26). The parties, however, are unable
5  to agree on an appropriate sample size. Defendants contend that they should only be required to
6  produce a 1 percent sampling for wage statements, a 5 percent sampling for electronic time and
7  payroll records, and that *Belaire-West* notices[2] should be sent to 5 percent of the putative class
8  members. ECF No. 46 at 3. Plaintiffs contend that defendants should be required to produce a 10
9  percent sampling of wage statements, 30 percent sampling for electronic time and payroll records,
10 and that *Belaire-West* notices should be sent to all putative class members.

11        As for wage statements, defendants' offer to produce only a one percent sampling of the
12 approximately 7,400 putative class members is unreasonable. Limiting plaintiffs' access to such
13 a small sample will substantially hinder their ability to demonstrate commonality and typicality
14 among the putative class members. Additionally, the proposed sample size falls far short of
15 sample sizes district courts have generally required under similar circumstances. *Talavera v.*
16 *SunMaid Growers of Cal.*, 2017 WL 495635, at *4 (E.D. Cal. Feb. 6, 2017) (finding that a ten
17 percent random sampling was appropriate where there was 5,309 putative class members);
18 *Quintana v. Claire's Boutiques, Inc.*, Case No. 5:13-cv-00368-PSG, 2014 WL 234219, at *2
19 (N.D. Cal. Jan. 21, 2014) (ordering defendants to provide information for a 20% sample of class
20 members and allowing the parties to determine the particulars of how to select the sample); *Romo*
21 *v. GMRI, Inc.*, 2013 WL 11310656, at *5 (C.D. Cal. Jan 25, 2013) (finding 20 percent random
22 sample of approximately 21,000 putative class members appropriate to assess "whether there is
23 an illegal company-wide policy and/or whether class treatment is appropriate . . . ."). The
24 /////

25
26    [2] "A Belaire notice is the term used to describe the opt-out notice sent to potential class members informing them of the lawsuit and informing them that if they do not want their contact
27 information released to plaintiff's counsel they may return an enclosed postcard." *Talavera v. Sun Maid Growers of Cal.*, 2017 WL 495635, at *5 (E.D. Cal. Feb. 16, 2017) (citing *Belaire-*
28 *West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554, 561-63 (2007)).

court finds that a 10 percent sample is an adequate sample size to allow plaintiffs to assess commonality and typicality while limiting defendants' burden of production.

Defendants, relying on *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225 S.D. Cal. 2015) contend that should they be ordered to produce a sample larger than one percent, plaintiffs should bear the cost of producing such documents. ECF No. 46 (citing). In regards to discovery, "the presumption is that the responding party must bear the expenses of complying with discovery requests . . . ." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, when a party seeks "inaccessible" electronically stored information ("ESI")—which "means that expenditure of resources required to access the content is itself unreasonable"—courts have found it appropriate to shift the cost of production to the requesting party. *Bridgepoint Educ., Inc.*, 305 F.R.D. at 239. Examples of "inaccessible" ESI include "backup tapes and erased, fragmented, or damaged data . . . ." *Id*. To obtain such information at the responding party's "expense, the requesting party must demonstrate need and relevance that outweigh the costs and burdens of retrieving and processing this provably inaccessible information." *Id*.

Defendants submit the declaration Melissa Wiley, a payroll manager for MarketSource, who states that with the software platform used by MarketSource she is only able to gather wage statements for one employee at a time. ECF No. 43 ¶ 6. She further states that there is no mechanism for pulling all wage statements for an individual employee in a single download. Instead, she is limited to downloading wage statements in blocks of 12. *Id*. Given these limitations, Ms. Wiley estimates that it will take between 175 and 303 employee hours to pull wage statements for 700 employees, which is just shy of a 10 percent sampling. ECF No. 43 ¶¶ 13, 14. Plaintiffs disagree with the estimated burden assessed by Ms. Wiley. In support of their position, plaintiffs submit the declaration of Michael Kunkel, the Director of Investigative Services for Setec Security Technologies, Inc., who states that based on his experience with the

/////
/////
/////

8

software utilized by MarketSource, he estimates it would only take approximately 3 hours to export wages statements for 700 employees.[3] ECF No. 45 ¶¶ 17, 18.

Defendants' evidence fails to show that the wage statements are inaccessible because "expenditure of resources [is] required to *access the content*" of the documents. *See id*. Instead, Ms.Wiley's declaration indicates that accessing the wage statements and their content is easily achievable, but that compiling all wage statements for putative class members may prove somewhat time consuming. ECF No. 43 ¶¶ 6, 13, 14. Even that burden is highly disputed by plaintiffs' IT consultant. But taking the burden identified by Ms. Wiley at face value does not outweigh the relevancy and need for the documents, which are necessary for plaintiffs to seek class certification. Accordingly, there is no basis for requiring plaintiffs to pay the cost of production.

Turning to electronic time and payroll records, defendant proposes a sample size of 5 percent, while plaintiffs request a sample size of 30 percent. Again, the limited sample size proposed by defendants impedes plaintiffs' ability to adequately assess commonality and typicality among class members and falls far short of sample sizes ordered in similar cases. More significantly, defendants have failed to demonstrate that producing time and payroll records would be overly burdensome. As for payroll records, Ms. Wiley indicates that MarketSource's software is capable of compiling payroll records in an Excel-type format. ECF No. 43 ¶ 15. Although she notes that it is "unclear how long this process would take," she also states that "the turn-around time could be as much as one or two weeks because the search query must be completed." Ms. Wiley's declaration merely reflects that defendants may need up to two weeks to compile payroll records. It does not, however, establish that production of payroll records

---

[3] Defendants have filed evidentiary objections to Mr. Kunkel's declaration. ECF No. 47. Defendants content that Mr. Kunkel's statements are unsupported and based on speculation because he does not have personal knowledge of the features of the specific wage statement and payroll software MarketSource utilizes. *Id*. Accordingly, they contend that his opinions are unreliable and should be excluded pursuant to Federal Rule of Evidence 702. Mr. Kunkel's declaration was submitted to assist the court in assessing the potential burden of producing discovery, not to "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Civ. P. 702(a). Accordingly, defendants' evidentiary objections are overruled.

would be overly burdensome. Defendants similarly fail to show that producing time keeping records would be unreasonably burdensome. Uday Karthik Vangapandu, a business intelligence manager with MarketSource, estimates that time records for 700 employees could be compiled in one day and that the same records for 7,000 employees could be compiled in two days. Decl. of Uday Karthik Vangapandu (ECF No. 44) ¶ 7. This evidence fails to demonstrate an unreasonable burden in producing records for all putative class members, much less the 30 percent sample requested by plaintiff.

Accordingly, the court finds that the 30 percent sample size proposed by plaintiffs is appropriate for both time and payroll records. Further, given the limited burden in producing such documents, defendants' argument that plaintiffs should pay for the production of such documents is rejected.

Lastly, in their supplemental briefing the parties quarrel over whether a *Belaire-West* notice should be sent to all putative class members or only a small sample. Defendants contends that there is no reason a 5 percent sampling would not be sufficient. ECF No. 46 at 19. They further argue that should the court order notices be sent to a larger sample of putative class members, plaintiffs should bear the entire cost of sending the notices. *Id*. at 19-20. Plaintiffs contend that they are entitled to names and contact information for all punitive class members and state that they are amenable to splitting the cost of sending notices. *Id*. at 12-13.

The parties' dispute over who shall bear the cost of sending opt-out notices need not be addressed to resolving the instant motion. The interrogatory at issue simply requests defendants provide the name, position, address, and phone number for putative class members. ECF No. 38-1 at 34. Courts regularly find that such information is discoverable at the pre-certification stage of class actions and that any potential privacy concerns can be address by a protective order. *See Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 815 (C.D. Cal. 2007) (finding that plaintiff was entitled to contact information, including telephone numbers, for putative class members); *Babbitt*, 1992 WL 605652 at *3 (at pre-certification stage of proposed class action, defendant employer ordered to disclose names, addresses, telephone numbers and social security numbers of current and past employees); *Crab Addison v. Superior Court*, 169 Cal. App. 4th 958, 964, 975

(2008) (upholding trial court's order compelling putative class members' contact information, including phone numbers); *York v. Starbucks*, No. CV 08-7919-GAF (PJW), 2009 WL 3177605 at *1 (C.D. Cal. June 30, 2009) (observing that telephone numbers are often publicly available, and that any potential intrusion into a putative class member's privacy caused by a telephone call is only minor and brief).

Defendants do not contend that providing the name, position, and contact information for all putative class members would be unreasonably burdensome. Moreover, any privacy concerns implicated in producing such information can be adequately addressed by a properly tailored protective order. Accordingly, defendants will be required to provide the requested information, but only after the parties submit a proposed protective order for the court's review that addresses, at a minimum, the use of names and contact information for putative class members.

IV.   Conclusion

Accordingly, it is hereby ORDERED that plaintiffs' motions to compel (ECF Nos. 34, 35) are granted as follows:

1. Within 7 days of this order, the parties shall submit a stipulated protective order addressing, at a minimum, the use of the names and contact information of putative class members. Within 7 days of the court's approval of a protective order, defendants shall provide plaintiffs with the information requested in plaintiffs' Interrogatory Number 1.

2. Within 21 days of this order, defendants shall provide a 10 percent sampling of wage statements and 30 percent samplings of time and payroll records for the putative class members.

DATED: August 14, 2018.

                                                                            /s/ Edmund F. Brennan
                                                                            EDMUND F. BRENNAN
                                                                            UNITED STATES MAGISTRATE JUDGE