1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JENNIFER BRUM, *et al.*,                Case No.  2:17-cv-00241-DAD-JDP

12              Plaintiffs,                   **FINDINGS AND RECOMMENDATIONS**

13        v.                                  THAT PLAINTIFFS' MOTION TO STRIKE
                                              AND MOTION FOR CLASS
14    MARKETSOURCE, INC., *et al.*,           CERTIFICATION BE DENIED

15              Defendants.                   ECF Nos. 70 & 93

16                                            OBJECTIONS DUE WITHIN FOURTEEN
                                              DAYS
17

18        Plaintiffs Jennifer Brum and Michael Camero filed this putative class action against

19   defendants MarketSource Inc. ("MarketSource") and Allegis Group, Inc. ("Allegis"), alleging

20   claims for violations of the California Labor Code and California Business and Professions Code

21   §§ 17200, *et seq.*[1]  ECF No. 16.  Plaintiffs have filed a motion for class certification.  ECF

22   No. 70.  They have also moved to strike expert opinion evidence that defendants submitted in

23   support of their opposition to plaintiffs' motion for class certification.  ECF No. 93.  I recommend

24   that both plaintiffs' motion to strike and their motion for class certification be denied.

25

26   ─────────────────────

27        [1] After initiating this action, plaintiff Jennifer Brum changed her legal name to Jennifer
     Griffin.  *See* ECF No. 70-5.  Notwithstanding this change, the parties' pleadings primarily use
     Brum when referring to Ms. Griffin.  To avoid confusion, these findings and recommendations
28   also refer to Ms. Griffin by her legal name at the time the case was commenced.

1    **I.      Background**

2          MarketSource, a subsidiary of Allegis, is a nationwide sales and marketing company that

3    partners with clients to provide sales and retail personnel at client sites throughout the United

4    States.[2]  ECF No. 16 ¶ 26; ECF No. 77-10 ¶ 2.  One aspect of the company's business involves

5    selling third-party mobile phones and data plans at kiosks located in retail stores, including

6    Target.  ECF No. 70-1 at 8.  Brum was previously employed by defendants as a Wireless Team

7    Leader at several Target stores in and around Stockton, ECF No. 16 ¶ 3, while Camero worked as

8    a Target Mobile Manager at two Target stores in San Diego, *id.* ¶ 4.[3]  Plaintiffs allege defendants

9    maintain policies and practices that deprive employees who staff the kiosks to overtime pay,

10   timely meal and rest breaks, reimbursement of business expenses, timely receipt of all wages

11   owed, and accurate wage statements.  *Id.* ¶¶ 13-19, 21-27.

12         On January 3, 2013, plaintiffs filed this putative class action in the San Joaquin County

13   Superior Court.  ECF No. 1-1 at 5-50.  Defendants subsequently removed to this court.  ECF No.

14   1.  The case proceeds on plaintiffs' second amended complaint, which alleges claims for:

15   (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure

16   to provide rest periods; (5) failure to provide accurate wage statements; (6) failure to timely pay

17   wages owed; (7) failure to reimburse business expenses; (8) unlawful business practices in

18   violation of California Business & Professionals Code; and (9) unfair business practices in

19   violation of California's Unfair Competition Law.  ECF No. 16.

20         Plaintiffs now move to certify a class comprised of: "All individuals employed by

21   Defendants in California as non-exempt, hourly paid employees who worked for Marketsource in

22   a retail capacity at any time from January 3, 2013, through the date of class certification ('Class

23   Period')."  ECF No. 70 at 3.  They also seek to certify the following subclasses:

24   ────────────────────

25         [2] The second amended complaint alleges that MarketSouce is a wholly-owned subsidiary
     of Allegis.  ECF No. 16 ¶ 17(c).
26         [3] Plaintiffs contend that they were jointly employed by MarketSource and Allegis.  ECF
     No. 70-1 at 8.  Conversely, Allegis argues that class members were employed by MarketSource
27   and that a lack of evidence establishing an employment relationship is fatal to certification.  ECF
     No. at 78.  I decline to address this argument since plaintiffs' motion for class certification should
28   be denied on other grounds.

1. <u>Overtime Rate Class</u>:[4]

    All Class Members employed from January 3, 2013, to April 1, 2015, who earned a non-discretionary bonus and/or incentive payment during the same week they earned overtime wages.[5]

2. <u>Off the Clock Class</u>:

    All Class Members required to attend off the clock meetings and/or conference calls from January 3, 2013, to the date of certification.

3. <u>Rest Break Class</u>:

    All Class Members who worked at least one shift of three and one-half hours or more during the Class Period.

4. <u>Rest Break Premium Class</u>:

    All Class Members who worked at least one shift of three and one-half hours or more during the Class Period.

5. <u>Meal Break Class</u>:

    All Class Members who worked at least one shift of more than five hours during the Class Period.

6. <u>Business Expense Class</u>:

    All Class Members, excluding Field Service Representatives, employed by Defendants from January 3, 2014, through the date of class certification.

7. <u>Final Pay Class</u>:

    All Class Members who ended their employment with Defendants at any time from January 3, 2014, through the date of class certification.

8. <u>Wage Statement Subclass</u>:

    All Class Members who received at least one wage statement from January 3, 2016, through the date of class certification.

---

    [4] For this first subclass, plaintiffs contend that class members were denied all wages owed for overtime work due to defendants' failure to accurately calculate their rate of pay for overtime work. Liability is not premised on using the incorrect rate of pay for non-overtime work. Accordingly, I refer to this class as the "Overtime Rate Subclass" and not "Regular Rate Subclass—the term used by plaintiffs.

    [5] The proposed class is defined as "[a]ll Class Members who worked at least one shift of three and one-half hours or more during the Class Period." ECF No. 70 at 3.

1    ECF No. 70 at 3-4; *see* ECF No. 70-1 at 8-9.

2          Plaintiffs also seek to certify a subclass for their unfair competition claims, which are

3    derivatives of their claims for "failure to pay employees all wages due during employment,

4    including meal and rest break premiums, and failure to reimburse employees for necessary

5    business expenses."  ECF No. 70-1 at 9.

6                                    **Motion to Strike**

7          Plaintiffs move to strike the opinion of defendants' expert, Robert W. Crandall, which was

8    submitted in support of defendants' opposition to the motion to certify.  ECF No. 93.  They

9    complain that Mr. Crandall's declaration impermissibly extends beyond the scope of proper

10   expert testimony and fails to meet the minimum standards for admissibility and reliability.

11   Specifically, they request that the court exclude the following categories of testimony:

12   (1) irrelevant opinion and narratives; (2) improper legal arguments and legal conclusions;

13   (3) unscientific conclusions, speculation and conjecture; and (4) unreliable analysis relating to

14   declarant testimony.  ECF No. 93-1 at 5-6.  Because the court did not rely on Mr. Crandall's

15   opinion in reaching its decision on plaintiffs' motion to certify, it is unnecessary to address the

16   merits of the motion to strike.  Accordingly, the motion to strike should be denied.

17                              **Request for Judicial Notice**

18         Defendants ask that the court take judicial notice of court documents—including

19   arbitration agreements, tentative rulings, and orders—filed in ten California Superior Court cases.

20   ECF No. 77-2.  The request is denied.  Although defendants state that "the relevance of these

21   matters is detailed in" their opposition briefs, those filings neither discuss nor cite to the state

22   court documents.  Consequently, it is unnecessary to consider these documents in resolving

23   plaintiffs' motion for class certification.[6]

24   _____

25         [6] To the extent that this order does not discuss every point raised by the parties, the
     undersigned has concluded that those points were unpersuasive or immaterial.  For example, the
26   undersigned declines to rule on the parties' extensive list of evidentiary objections.  *See In re
     ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal. 2015) ("Since a motion for class
27   certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules
     of Civil Procedure or the Federal Rules of Evidence.") (internal quotations omitted); *Sali v.
28   Corona Regional Med. Ctr.*, 909 F.3d 996, 1002-03 (9th Cir. 2018) (holding that at the class

                                          4

**Motion for Class Certification**

**I.      Legal Standards**

When a purported class action is filed, the court must determine whether the purported class should be allowed to proceed as such via a class certification motion. Fed. R. Civ. P. 23(c)(1). The party seeking class certification bears the burden of establishing that the certification requirements of Rule 23 have been satisfied. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982) (a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted); *see Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) ("Prior to class certification under Rule 23, discovery lies entirely within the discretion of the Court.").

To proceed with class claims, plaintiffs must demonstrate that "there are questions of law or fact common to the class, as well as demonstrate numerosity, typicality and adequacy of representation." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Food LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quotations omitted); *see* Fed. R. Civ. P. 23(a)(1)-(4). Additionally, the case must fit into one of three categories of actions delineated in Rule 23(b). *See* Fed. R. Civ. P. 23(b). To fit within Rule 23(b)'s third category, the plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "'The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important

---

certification "stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial"); *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796-AWI-BAM, 2023 WL 1868973, at *9 (E.D. Cal. Feb. 9, 2023) (observing that "it would be improper for the Court to reject the challenged declarations and depositions at [the certification] stage based on Defendants' hearsay argument alone").

5

1   than the non-common, aggregation-defeating, individual issues.'" *Olean Wholesale*, 31 F.4th at

2   663-64 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

3         "A party seeking class certification must affirmatively demonstrate his compliance with

4   the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous

5   parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

6   350 (2011) ("*Dukes*") (emphasis in original).  Rule 23(b)(3) only "requires a showing that

7   questions common to the class predominate, not that those questions will be answered, on the

8   merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455,

9   459 (2013).

10  **III.   Discussion**

11        Defendants advance three primary arguments as to why plaintiffs' motion should be

12  denied.  First, they argue that certification is improper because the majority of the proposed class

13  members signed arbitration agreements.  ECF No. 77 at 14-15.  Second, they claim plaintiffs have

14  not established that they or their counsel can adequately represent the proposed classes.  *Id*. at 15-

15  17.  Third, they contend that plaintiffs have failed to satisfy Rule 23(a)(3)'s requirement that

16  common questions predominate over questions affecting only individual class members for each

17  of the proposed classes.  *Id*. at 17-26.  Additionally, defendants argue plaintiffs have not

18  established that a trial on the class claims would be manageable.  *Id*. at 26-27.

19        I find that, with the exception of plaintiffs' overtime rate subclass, certification is

20  inappropriate because most class members signed an arbitration agreement.  As for the overtime

21  rate subclass, plaintiffs' motion should be denied for failure to establish Rule 23's prerequisites.[7]

22        A.     Arbitration Agreements

23        Defendants first argue that plaintiffs cannot satisfy Rule 23's prerequisites because most

24  putative class members signed an arbitration agreement and plaintiffs did not.

25        Beginning on January 1, 2016, MarketSource began presenting an arbitration agreement

26  as part of its onboarding process to individuals who had accepted employment.  The arbitration

27  ─────────────────

28        [7] Because these reasons alone warrant denial of plaintiffs' motion, I decline to address the parties' remaining arguments.

1    agreement covers all claims against MarketSource "arising out of and/or directly or indirectly

2    related to . . . employment with the Company," including "claims for wages, compensation,

3    penalties or restitution."[8]  ECF No. 77-18 at 20, 24, 28, 32.  The agreement also provides a class

4    action waiver: "No Covered Claims may be initiated or maintained on a class action, collective

5    action, or representative action basis either in court or arbitration."  *Id*.  According to defendants,

6    since January 3, 2013—the beginning of the class period—MarketSource has employed 12,703

7    punitive class members in California, 9,297 of whom signed an arbitration agreement.  ECF No.

8    77 at 14-15; ECF No. 77-18 at 12.

9        Both Brum and Camero began working for MarketSource prior to 2016 and therefore

10    were never presented with an arbitration agreement.  They now propose that they be permitted to

11    represent classes comprised largely of individuals who signed an arbitration agreement, but this

12    court has previously concluded that "[t]he Ninth Circuit has foreclosed the viability of that

13    proposition."  *Valencia v. VF Outdoor, LLC*, No. 1:20-cv-01795-DAD-SKO, 2021 WL 5154161,

14    at *3 (E.D. Cal. Nov. 5, 2021) (citing *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579

15    (9th Cir. 2015), *findings and recommendations adopted by* 2021 WL 5811932 (E.D. Cal. Dec. 7,

16    2021).

17
18
19
20
21
22
> In *Avilez*, the named plaintiff had not signed a class action waiver, yet the district court certified classes and subclasses that included employees who signed class action waivers.  The Ninth Circuit held that the district court abused its discretion to the extent it certified those classes, because class members who signed a waiver would "have potential defenses that Avilez would be unable to argue on their behalf."  The Ninth Circuit therefore concluded that, "[t]o the extent the classes and subclasses include individuals who signed class action waivers, Avilez is not an adequate representative and her claim lacks typicality."

23    *Id*. (internal citations omitted).

24        District courts in this Circuit have also consistently concluded that plaintiffs who are not

25    subject to an arbitration agreement cannot represent a class comprised of individuals are subject

26

---

27        [8] Since January 1, 2016, MarketSource has made slight modifications to the arbitration

28    agreement.  However, each version is, for relevant purposes, substantively identical.  *See* ECF No. 77-18 at 20, 24, 28, 32.

to such agreements.  *See, e.g.*, *Cornejo v. Big Lots Stores, Inc.*, No. 2:22-cv-01247-MCE-DB, 2023 WL 3737058 (E.D. Cal. May 31, 2023); *Andrada v. American First Finance, Inc.*, No. 18-cv-06743-SK, 2022 WL 3369410, at *4-5 (N.D. Cal. Aug. 16, 2022; *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021 WL 811856, at *4 (C.D. Cal. Feb. 9, 2021).

Plaintiffs argue that the arbitration agreements do not prevent certification because the agreements are unenforceable as a matter of law.  ECF No. 94 at 16-18.  Plaintiffs, however, are not subject to the arbitration agreement and therefore lack standing to challenge its enforceability.  *See Valencia*, 2021 WL 5154161 at *5 ("Given that Plaintiff did not sign the Arbitration Agreement, she therefore has no standing to argue that it is inapplicable, void, unconscionable, or unenforceable."); *Cornejo*, 2023 WL 3737058 at *3 n.3 ("Because Plaintiff did not sign either arbitration agreement, she lacks standing to challenge their applicability and enforceability."); *Heredia*, 2021 WL 811856 at *4 n.4 (finding that the plaintiff, who did not sign arbitration agreements, lacked standing to challenge the agreement's enforceability); *Andrade*, 2022 WL 3369410 at *5 ("The Court concurs with the overwhelming majority of cases finding that a plaintiff who is not subject to an arbitration provision lacks the standing to challenge its conscionability.").

Except for the overtime rate subclass—which is limited to individuals employed before MarketSource began distributing arbitration agreements—each proposed class consists mostly of individuals who signed an arbitration agreement.  As plaintiffs did not sign an agreement, they lack typically and adequacy for purposes of Rule 23.  For this reason, certification is inappropriate for all proposed classes except for the overtime rate subclass.

B.     Overtime Rate Subclass

Plaintiffs define the overtime rate subclass as: "All Class Members employed from January 3, 2013, to April 1, 2015, who earned a non-discretionary bonus and/or incentive payment during the same week they earned overtime wages."  ECF No. 70 at 3.  They contend that defendants maintained a "policy and practice of failing to factor in all non-discretionary bonuses and incentives into the regular rate of pay for purposes of calculating overtime earnings from January 3, 2013 through April 1, 2015."  ECF No. 71-1 at 8.

California law requires that overtime work—i.e., work in excess of eight hours in a single day and in excess of forty hours in a workweek—"be compensated at the rate of no less than one and one-half times the *regular rate of pay* for an employee."  Cal. Lab. Code § 510(a) (emphasis added).  The "regular rate of pay" under section 510 includes "all remuneration for employment paid to, or on behalf of, the employee."  *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1130 (C.D. Cal. 2011).  Thus, when calculating 1.5 times an employee's rate of pay for overtime work, the employer must include nondiscretionary bonuses and commissions.

MarketSource's employees are compensated at a base hourly rate for each hour worked.  In addition to an hourly wage, MarketSource pays employees bonuses and incentives under a variable compensation program.  The amount of the incentives is determined by the number and type of sales made during weekly and monthly periods, as well as the number of hours worked during the relative period.  Plaintiffs claim defendants maintained a "policy and practice of failing to factor in all non-discretionary bonuses and incentives into the regular rate of pay for purposes of calculating overtime earnings from January 3, 2013 through April 1, 2015."  ECF No. 70-1 at 8.

The record adequately supports the existence of the alleged policy and practice.  Indeed, Melissa Wiley, the Director of Employee Support and Payroll for MarketSource, conceded during her deposition that prior to April 2015, MarketSource did not include non-discretionary bonuses in calculating the rate of pay for overtime work.

The problem for plaintiffs is that they have not demonstrated how many employees were subject to this policy.  As previously mentioned, plaintiffs define this class as "All Class Members employed from January 3, 2013, to April 1, 2015, who earned a non-discretionary bonus and/or incentive payment during the same week they earned overtime wages."  ECF No. 70 at 3.  But plaintiffs fail to cite to any evidence in the record indicating how many employees fall within this group.

Plaintiffs' expert, Eric Lietzow, opined that based on his review of a sample of wage statements, he would expect the proposed class to include 236 unique individuals.  But Mr. Lietzow based that opinion on an assumption that is contradicted by other evidence in the record.

9

Specifically, he assumed that incentive payments were earned in the same period that they were made. Consequently, his review of payroll records focused on identifying wages that included both overtime wages and payment of incentives.

As detailed in Ms. Wiley's declaration, Mr. Lietzow's assumption was incorrect. Ms. Wiley explains that:

> During the 2013 to 2015 time period, for any proposed class members who were eligible to receive [weekly] bonuses from 2013 to 2015, [these] bonuses were paid during the first full third week of the month after the month during which bonuses were earned. For example, for a [weekly] bonus that was earned in July 2013, that [] bonus would not have been paid until the week of August 18, 2013 (i.e., the first full third week), either on that Wednesday or Thursday, depending on whether the employee was enrolled in direct deposit. During the 2013 to 2015 time period, [weekly] bonus payments were never paid the week immediately after the period in which such bonuses were earned.

ECF No. 77-18 at 50.

Moreover, during his deposition, Mr. Lietzow conceded that if his assumption about the timing of bonus payment was incorrect, it would alter his opinion. ECF No. 77-9 at 274-76. Given that Mr. Lietzow's opinion is the only evidence bearing on the number of potential individuals in class, and that his opinion is unreliable, I find that plaintiff has failed to establish Rule 23's numerosity requirement. Accordingly, plaintiffs' motion should also be denied as to the overtime rate subclass.

Based on the foregoing, it is hereby RECOMMENDED that plaintiffs' motion for class certification, ECF No. 70, and motion to strike, ECF No. 93, should be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  ___March 14, 2024___                      _____
                                                   JEREMY D. PETERSON
                                                   UNITED STATES MAGISTRATE JUDGE

11