Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel S. Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Shealene P. Mancuso (SBN 331740)
Shealene.Mancuso@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiffs Jennifer Brum and Michael Camero
[*Additional Attorneys listed on following page*]

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BRUM and MICHAEL CAMERO, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MARKETSOURCE, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS MARYLAND MARKETSOURCE, INC., a Maryland corporation; ALLEGIS GROUP, INC., a Maryland corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 2:17-cv-00241-DAD-JDP<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION** |

Jonathan M. Lebe (SBN 284605)
Jon@lebelaw.com
Lebe Law
A Professional Law Corporation
777 S. Alameda Street, Floor 2
Los Angeles, CA 90021-1657
Tel:     (213) 358-7046

Attorneys for Plaintiffs Jennifer Brum and Michael Camero


Rodney Mesriani (SBN 184875)
Rodney@mesriani.com
Mesriani Law Group,
A Professional Law Corporation
5723 Melrose Avenue
Los Angeles, CA 90038
Tel:     (310) 826-6300
Fax:     (310) 820-1258

Attorneys for Plaintiffs Jennifer Brum and Michael Camero

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 1

  A.  Defendant's Oppositions Fails to Demonstrate Why Each Proposed Class

      Should Not Be Certified .......................................................................................... 1

      1.  The Regular Rate Class Should Be Certified ................................................. 2

      2.  The Off the Clock Subclass Should Be Certified ........................................... 6

      3.  The Meal Break and Rest Break Subclasses Should Be Certified ................... 7

          i.  The Donohue Burden-Shifting Presumption Applies Here .................. 7

          ii. Defendant Has Not and Cannot Rebut the Donohue

              Presumption ........................................................................................ 9

      4.  The Rest Break Premium Subclass Should Also Be Certified ......................... 11

      5.  The Business Expense Subclass Should Be Certified ..................................... 12

      6.  The Derivative Subclasses  Should Be Certified ........................................... 12

  B.  The Claims of All Class Members Can Be Manageably Tried ................................... 14

  C.  Plaintiffs Are Adequate Class Representative of the Classes They Seek to

      Represent ................................................................................................................ 14

  D.  Plaintiffs' Counsel Are Adequate and Defendant's Accusations Are

      Unfounded .............................................................................................................. 15

  E.  The Scope of Plaintiffs' Proffered Evidence Is Sufficient ...................................... 15

  F.  Modification of the Scheduling Order Is Not a Bar to Class Certification .................... 15

III. CONCLUSION ................................................................................................................. 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Contrary to Defendant's contentions, Plaintiffs have presented unrefuted substantial evidence showing that Plaintiffs' theories of liability raise at least one predominant common issue per claim that can be resolved on common proof and is apt drive the resolution of the action, which is all that is required for certification. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016); *see also Olean Hotel Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 665 (9th Circuit 2022) (same). Moreover, as the California Supreme Court declared in *Brinker Rest. Corp. v. Super. Ct*, 53 Cal. 4th 1004 (2011), where, as here, "[t]he theory of liability is that [the defendant] has a uniform policy, and that that policy, measured against [the labor code and] wage order requirements, allegedly violates the law—[that theory of liability] is by its nature a common question eminently suited for class treatment*." Id.* at 1033-34. Here, each of Plaintiffs' theories presents at least one predominant common issue based on Defendant's uniform policies or practices that is central to Plaintiffs' class claims.

## II.    ARGUMENT

### A.    Defendant's Oppositions Fails to Demonstrate Why Each Proposed Class Should Not Be Certified

Defendant argues for a more heightened standard than is required under the Federal Rules. Rule 23(a)(2) only requires the presence of "at least one common question central to her claim." *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020); *see also Abdullah v. United States Sec. Assoc., Inc.*, 731 F. 3d 952, 956 (9th Cir. 2013) (McCormick also does not dispute the existence of a single question common to each proposed class). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Negrete v. Conagra Foods, Inc.*, 2019 WL 1960276 *3 (C.D. Cal. 2019) (*citing Hanon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998)).

Importantly, Rule 23 does not grant a "license to engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.;see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 351, n. 6 (2011) (a district court has no "'authority to conduct a preliminary inquiry into the merits of a suit'" at class certification unless it is necessary "to determine the propriety of certification." Moreover, "[d]oubts regarding the propriety of class certification should be resolved in favor of certification." *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2014 WL 321159, at *4 (E.D. Cal., Jan. 29, 2014), report and recommendation adopted, 2014 WL 631586 (E.D. Cal., Feb. 18, 2014).

### 1.    The Regular Rate Class Should Be Certified

Defendant has not proffered any meaningful argument that Plaintiffs' Regular Rate Class should not be certified. Defendant argues that Plaintiffs' expert analysis is incorrectly based on bonuses being earned over the course of a month instead of specific weeks within that month. However, Defendant does not claim that this alleged inaccuracy has any effect on whether Plaintiffs have met the Rule 23 prerequisites for class certification. Nor does Defendant claim that the bonus at issue was in fact calculated into the regular rate of pay. At most, the alleged inaccuracy raises a damages issue, which does not defeat class certification. *Leyva v. Medline Indus.,* 716 F.3d 510, 513 (9th Cir.2013). Indeed, merits-based questions, such as this, are not relevant to class certification and may not be considered by the Court. *See Amgen*, 113 S. Ct. at 1194-95. Even if Defendant's position is vindicated, it would not rebut Plaintiffs' claim; it would only narrow its scope. Significantly, Defendant's argument is contradicted by its corporate representative's prior testimony, who admitted nondiscretionary bonuses and incentives were not factored into the calculation of the regular rate for overtime purposes. (Declaration of Melissa Grant ("Grant Decl."), Ex. A at 85:22–86:4.)

"[W]hether class members could actually prevail on the merits of their claims" is not a proper inquiry in determining the preliminary question "whether common questions exist." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n. 8 (9th Cir.2011). "To hold otherwise would turn class certification into a mini-trial," *id*., when the purpose of class certification is merely "to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (citation omitted).

Plaintiffs' Regular Rate claim is that as a matter of a common practice uniformly applied to all employees where applicable, Defendant did not factor in all non-discretionary bonuses and incentives into the regular rate of pay for purposes of calculating overtime earnings from January 3, 2013 through April 1, 2015. Plaintiffs need not allege that Defendant had an actual policy not to factor in non-discretionary bonuses into the regular rate calculation, as Defendant disingenuously claims. This central issue, which is apt to drive the

resolution of Plaintiffs' regular rate claim, may be broken down into three subparts, each of which raises a predominant common issue: (1) did Defendant pay non-discretionary bonuses or incentives, (2) did Defendant factor each such bonus and incentive into the regular rate of pay for purposes of calculating overtime, and (3) were employees paid overtime in the same workweek that they earned non-discretionary bonuses or incentives.

The first two subparts are not in dispute. Defendant paid non-discretionary bonuses/incentives (*see generally* Doc. 160); and Defendant did **not** factor them into the regular rate of pay for purposes of calculating overtime[1] ( *see generally id.*; *see also* Grant Decl., Ex. A at 85:22–86:4). It is only the third subpart — whether employees were paid overtime in the same workweek that they earned non-discretionary bonuses or incentives — that is nominally in dispute; however, it does not in any way preclude class certification. There is potentially a dispute over which workweek bonuses were earned that may affect which overtime payments were improperly calculated. But the fact is that class certification is appropriate whether Plaintiffs' or Defendant's position is ultimately vindicated, because the only difference would be which overtime payments were improperly calculated—not whether any overtime payments were improperly calculated; and this has no bearing on the Rule 23 prerequisites.

Bonuses were paid on a monthly basis. Plaintiffs claim that those bonuses were earned over the course of the prior month. Defendant, on the other hand, claims that they were earned in select weeks in the prior month. (Doc. 160 at 26:19–27:3.) Thus, if Defendant's position is vindicated, it would potentially reduce the number of overtime payments that were improperly calculated. Crucially, however, Defendant has not claimed that this would in turn affect any of the factors that determine the certifiability of a class.

> [I]t is critical to keep in mind that class certification is different from summary judgment. "A court ... is merely to decide [whether a class action is] a suitable method of adjudicating the case." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015)… "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence

---

[1] For these same reasons, the instant case is distinguishable from *Bebber v. Dignity Health* on which Defendant relies. In *Bebber* class certification was denied because the plaintiffs could not "point to any policy [that] excluded non-discretionary bonuses from the calculation of the regular rate for purposes of overtime." (Opp. at 25:26–26:9 (quoting *Bebber*, 2021 WL 1187268, *14 (E.D. Cal. Mar. 30, 2021).) In *Bebber*, the same bonus code included discretionary and non-discretionary bonuses, the regular rate sometimes factored in bonuses and sometimes did not, so the circumstances of every bonus payment would have to be individually examined to determine if it was discretionary or not. *Id.* at *14. Here, it is undisputed that there are bonus codes that are for non-discretionary bonuses and that they were not included in any regular rate calculations during the relevant period.

establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025).

Defendant does not claim that (a) Plaintiff Brum was not paid overtime in the same workweek he earned a bonus and is thus not an adequate class representative, (b) so few employees were paid overtime in the same workweek that they earned a bonus that numerosity is not achieved, or (c) determining which workweeks an employee both earned overtime and earned a bonus is not manageable. Because the resolution of what workweek bonuses were earned in does not affect whether the Regular Rate claim is capable of class-wide resolution, it is not an issue for the Court to decide at this juncture. Indeed, Defendant's class-wide argument demonstrates that this issue is perfectly suited for class-wide resolution. And it bears repeating that even if Defendant is successful in its argument that bonuses were earned in specific workweeks within a month rather than the whole month, this would only narrow the scope of Defendant's liability to those weeks—Plaintiffs would still have a successful claim as to those weeks. Furthermore, this issue is sufficiently contested that the matter should be adjudged by a vehicle designed to determine merits-issues (*i.e.*, a motion for summary judgment or trial), rather than a motion for class certification.

Plaintiffs' position that the bonuses were earned over the course of a month is grounded in evidence. One of the bonuses at issue, MBH, is literally called "MS *Monthly* Bonus Program – Hourly." (Doc. 147-4 at 55 (emphasis added).) Defendant's corporate representative, Ms. Wiley, previously submitted a declaration in which she stated that "MBH bonuses were paid during the first full third week of the month after ***the month during which MBH bonuses were earned***." (Doc. 77-18, ¶ 52.) Ms. Wiley also stated that "BPT bonuses were paid during the first full third week of the month after ***the month during which MBH bonuses were earned***." (*Id.*, ¶ 50.) And Ms. Wiley explained that bonuses were calculated based on monthly sales data. (*Id.*, ¶ 50, n1.) At deposition, Ms. Wiley was presented with sample wage statements for Plaintiff Brum to discuss what periods bonuses pertained to. (Grant Decl., Ex. A at 78:12–84:24.) Ms. Wiley explained that the BPT bonus Plaintiff Brum received "was earned the month prior." (*Id.* at 83:19–84:4.) Then, Ms. Wiley was shown two wage statements from the prior month, one of which included overtime pay, and Ms. Wiley agreed that the bonus paid in the following month "should have been connected to" those overtime earnings. (*Id.* at 84:5–24.) Notably, Ms. Wiley was able to confirm that the bonus pertained to those overtime earnings without consulting any other documents, which is consistent with Plaintiffs' position that the bonus pertained to all earnings in the prior month

1    — not just specific workweeks within the month, which Ms. Wiley in a declaration now claims can only be

2    identified by referring to other documents.

3        Defendant's claim that its bonuses were earned during specific workweeks during a month instead of

4    the month as a whole is based on Ms. Wiley's new declaration, which contradicts her deposition testimony, and

5    therefore should be disregarded especially since she doesn't say she was confused in deposition or explain the

6    discrepancy in her testimony. (*See generally* Doc. 170-18.) Ms Wiley bases her new claim on having "reviewed

7    the BPT and MBH payments made to proposed class members from January 2013 through March 2015,

8    specifically reviewing the comments that explain the type of payment and time periods for which BPT and MBH

9    payments were earned." *(Id.* ¶ 8.) However, the purported documents that Ms. Wiley reviewed and allegedly

10   show the time periods for which the payments were earned ***are not submitted by Defendant as exhibits and***

11   ***have not been produced in discovery, despite being responsive to various discovery requests***. While the Court

12   may have some discretion to consider evidence at class certification that would not be admissible at trial, denying

13   class certification based on hearsay in allegedly existing documents that were withheld in discovery and not

14   submitted as evidence would have to qualify as an abuse of discretion. And assuming Ms. Wiley's hearsay

15   testimony is accurate, this means Defendant has withheld crucial evidence and is now seeking to sandbag

16   Plaintiffs with that evidence to defeat class certification — an indefensible abuse of discovery.

17       Moreover, the same declarant, Melissa Wiley, provided a false verified response to Plaintiffs'

18   Interrogatory that stated Defendant properly factored all non-discretionary bonuses and incentives into the regular

19   rate of pay. (Grant Decl., Ex. A at 92:1-93:12). It was not until Defendant filed its Opposition to Plaintiffs'

20   Motion for Class Certification that Ms. Wiley admitted in deposition that her response was false and that

21   Plaintiffs' allegations were true—***Defendant did not factor in bonuses into the regular rate after all until April***

22   ***2015!*** *(Id.*) When pressed, she could not remember when she learned of the inaccuracy of her verified response

23   and refused to speculate. (*Id.* at 95:10-97:14.) Her defense to having falsely verified that Defendant did factor in

24   non-discretionary bonuses during the "relevant time period"—defined as January 3, 2013 to the present (*Id.* at

25   91:20-24) is a claim that strains credulity, namely: because she signed the verification in May 2017, she only

26   verified that Defendant correctly calculated the regular rate as of 2017. The interrogatory response speaks for

27   itself, and it did not say "as of 2017." The seriousness of this matter cannot be understated when considered in

28   the context of Defendant's Opposition, which argues that Plaintiffs could not identify any policy that said that

1  non-discretionary bonuses are not to be factored into the calculation of the regular rate for purposes of overtime.

2  As soon as it became clear that Plaintiffs' counsel intended to confront Ms. Wiley with evidence of Plaintiffs'

3  regular rate claim, Defendant's counsel stopped the deposition and declared that Defendant would seek a

4  protective order.   During the Parties' pre-motion conference, Hon. Jeremy Petersen saw right through

5  Defendant's counsels' tactics, stating he would permit Plaintiffs' counsel to move to compel the deposition

6  because counsel was entitled to an answer to the question. When the deposition resumed, Ms. Wiley admitted

7  that Defendant had provided Plaintiffs with false discovery responses.[2]  (Ex. A at 91:20-24, 92:1-93:12.).

8  ### 2.    The Off the Clock Subclass Should Be Certified

9  Plaintiffs' Off the Clock Subclass is premised on Defendant's company-wide practice of requiring their

10  employees to attend conference calls and work meetings during non-business hours, time for which they are not

11  paid. Defendant does not dispute that it requires employees to attend conference calls and work meetings during

12  non-business hours. They dispute that the time is uncompensated by pointing to pay records that show some

13  employees were paid for "Conference Call" time—i.e., conference calls that were held during shifts and entered

14  in the timekeeping system.  (Doc. 160-21, ¶ 36.)  Defendant points to no evidence—and there is none—

15  controverting the statements under penalty of perjury by Plaintiffs' declarants that they were not paid for

16  mandatory off-the-clock conference calls or work meetings that occurred outside of shifts. The only evidence

17  that Defendant cites is their pro forma ban on "off-the-clock work."

18  But contrary to Defendant's arguments, their pro-forma policy barring off-the-clock work does not mean

19  that they do not have a corporate practice of requiring off-the-clock conference calls and meetings during non-

20  business hours.   Nor does it defeat certification of Plaintiffs' Off-the-Clock Subclass.   The regulations

21  implementing the Fair Labor Standards Act state:

22
23  > [I]it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. ... The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do
24  > so.

25  29 C.F.R. § 785.13. As stated in *Brinker* in the context of an employer's obligation to provide meal periods, "an

26  employer may not undermine a formal policy of providing meal breaks by... imped[ing] or discourage[ing] [their

27

28  _____
[2] To date, Defendant has failed to amend its interrogatory response in violation of Rule 26 despite knowing that it is false.

1    employees] from doing so." 53 Cal.4th at 1040. Similarly, an employer may not adopt a garden variety off-the-

2    clock policy and then permit it to be systematically violated. Such was the case in *Arredondo v. Delano Farms*

3    *Co.*, 301 F.R.D. 493 (E.D. Cal. 2014). There, the defendant had a policy prohibiting off-the-clock work, but the

4    policy was systematically ignored with respect to pre-shift work tasks, which this Court held raised a common

5    issue amenable to class treatment. *Id.* at 518. In so ruling, this Court recognized that a showing of a common

6    policy that literally required off-the-clock work was "'neither necessary to the individual plaintiffs' claims nor

7    for a showing of predominance.'" *Id.* at 539 (citation omitted).

8        Here, Defendant, like every large employer, has a formal policy prohibiting off-the-clock work. But this

9    policy is on its face inconsistent with their undisputed uniform practice of requiring employees to attend

10   conference calls and meetings during work hours for which they are not paid. At most, Defendant's argument

11   makes clear the predominant common question on which Defendant's liability to the Off-the-Clock Subclass

12   will turn; *i.e.*, did Defendant have a practice of holding conference calls and/or work meetings during off hours.

13                    **3.    The Meal Break and Rest Break Subclasses Should Be Certified**

14                    **i.    The Donohue Burden-Shifting Presumption Applies Here**

15       Time records that show short, late, or missed meal breaks raise a rebuttable presumption of liability for

16   meal break violations, which an employer can rebut by either "presenting evidence that employees were

17   compensated for noncompliant meal periods or that they had in fact been provided complaint meal periods during

18   which they chose to work." *Donohue v. AMN Servs., LLC,* 11 Cal. 5th 58, 77 (2021). Defendant argues that

19   Plaintiffs are obligated to establish "***why*** an individual took a late or short or no meal period[.]" (Opp. at 18:18–

20   20.) Not so. *Donohue* unequivocally held that the burden to show employees voluntarily chose not to take a

21   compliant meal break falls squarely on the Defendant.

22       Defendant completely ignores the effect of the *Donohue* presumption. "In *Donohue*, the California

23   Supreme Court instructs courts that time record evidence is sufficient to establish liability on a meal period claim.

24   It is not Plaintiffs' burden to show an informal practice of pressure by their employer if the employer's records

25   are silent as to why employees skipped or delayed their meal periods. Instead, it is the employer's burden to plead

26   and prove it provided the meal break but the employee voluntarily chose not to take it. In sum, absent an

27   affirmative defense, plaintiff may prove liability on a classwide basis through time record evidence." *Santillan*

28   *v. Verizon Connect, Inc.*,  2022 WL 4596574 at *13 (S.D. Cal. Jun. 13, 2022). Here, Plaintiffs have submitted

1    Defendant's time records that show non-compliant meal periods, thus invoking the *Donohue* presumption and

2    shifting the burden to Defendant to rebut the presumption. *See Allison v. Dignity Health,* 112 Cal. App. 5th 192,

3    544 (2025) (the employer "indisputably bore the burden of rebutting the presumption of liability").

4         Moreover, *Donohue* explicitly repudiates Defendant's argument that it can place the burden on Plaintiffs

5    to establish that the time records do, in fact, demonstrate that Defendant failed to provide compliant meal periods:

> Because time records are required to be accurate, it makes sense to apply a rebuttable
> presumption of liability when records show noncompliant meal periods. If the records are
> accurate, then the records reflect an employer's true liability; applying the presumption would
> not adversely affect an employer that has complied with meal period requirements and has
> maintained accurate records. If the records are incomplete or inaccurate — for example, the
> records do not clearly indicate whether the employee chose to work during meal periods despite
> bona fide relief from duty — then the employer can offer evidence to rebut the presumption. It
> is appropriate to place the burden on the employer to plead and prove, as an affirmative defense,
> that it genuinely relieved employees from duty during meal periods. ***To place the burden
> elsewhere would offer an employer an incentive to avoid its recording duty and a potential
> windfall from the failure to record meal periods. Where the employer has failed to keep
> records required by statute, the consequences for such failure should fall on the employer,
> not the employee***.

14   11 Cal. 5th at 76 (citations omitted) (emphasis added).

15        The effect of the presumption was echoed in *Estrada v. Royalty Carpet Mills, Inc.*:

> ***Once the Donohue presumption was raised, though, plaintiffs no longer had the burden of
> proving a theory of class liability***. Rather, it would have been presumed from the time records
> that Royalty had provided untimely meal periods to its employees and was liable for those
> violations. Put differently, class liability would be presumed. The burden would then be on
> Royalty to show it gave employees compliant meal breaks that were voluntarily not taken.

19   76 Cal. App. 5th 685, 725 (2022) (emphasis added).

20        Lastly, the cases cited by Defendant in support of its argument are distinguishable. As a threshold issue,

21   two of Defendant's cases predate the California Supreme Court's decision in *Donohue*. (*See* Opp. at 19:17–23

22   (citing *Rojas-Cifuentes v. ACX Pac. Nw. Inc.*, 2018 WL 2264264 (E.D. Cal. May 17, 2018) at 20:23–21:2 (citing

23   *Lampe v. Queen of the Valley Med. Ctr.*, 19 Cal. App. 5th 832 (2018), a Court of Appeals decision that predates

24   *Donohue*). Three of Defendant's cases predate the California Court of Appeal's straightforward explanation of

25   the effect of the *Donohue* presumption in *Estrada*. (*See* Opp. at 18:23–24 (citing *Gonzalez v. HUB Int'l L³td.*,

---

[3] Because *Vega* predates the California Court of Appeals decision in *Allison*, discussed in the following section, it is not a reliable source for determining how a defendant may meet its burden for rebutting the *Donohue* presumption. Though, it bears noting that *Vega* placed significant weight on the class-member declarations that the defendant submitted (2023 WL 6940198, at *20), which is in direct contrast with the present case, as discussed further below.

No. ED CV 20-2600 PA (ASx), 2021 WL 3261634 (C.D. Cal. May 25, 2021), an unpublished district court case that predates *Estrada*); 18:24–26 (citing *Howell v. Leprino Foods Co.,* No. 1:18-cv-01404-AWI-BAM, 2022 WL 866213 (E.D. Cal. Mar. 22, 2022), an unpublished district court case that predates *Estrada*); 18:26–28 (citing *McCarty v. SMG Holdings, I, LLC,* No. 17-cv-06232-JD, 2022 WL 913092 (N.D. Cal. Mar. 29, 2022), an unpublished district court case released seven days after *Estrada*, effectively predating *Estrada* for all practical purposes). Defendant's remaining case, *Vega v. Delaware North Cos., Inc.* (Opp. at 19:10–13) actually applied the *Donohue* presumption and the resulting "transfer of burden under California law" (No. 119CV00484ADASAB, 2023 WL 6940198, at *20 (E.D. Cal. Oct. 20, 2023)). *Vega* denied class certification not because the *Donohue* presumption was insufficient to establish a basis for certification but because Defendant had rebutted the presumption. *Id.*

### ii. Defendant Has Not and Cannot Rebut the Donohue Presumption

To defeat class certification of Plaintiffs' *Donohue*-based claim, the burden is on Defendant to present substantial evidence rebutting the *Donohue* presumption, which would give rise to an unmanageable individualized inquiry. *See Allison,* 112 Cal. App. 5th at 215 ("The dispositive issue is whether substantial evidence supports the trial court's ruling that adjudication of [Defendant's] affirmative defense creates too many individualized inquiries to support class treatment.") Defendant has not done so.

Naturally, to rebut the presumption of meal period violations, Defendant must present evidence that it either paid meal break premiums for each violation or that it provided compliant meal periods but class members voluntarily chose to not to take them. In *Allison v. Dignity Health*, the Court of Appeal explained when such evidence may be sufficient to defeat class certification. 112 Cal. App. 5th at 213–18. *Allison* concluded that a defendant may defeat class certification if it presents substantial testimony from class members that they voluntarily took non-compliant meal periods and establishes that survey and representative testimony are not manageable methods of presenting the defendant's affirmative defense. *Id.* at 215–18.

Defendant has not presented either option. Defendant has not presented any evidence that class members voluntarily took non-compliant meal periods. Defendant has submitted only two declarations from class members. (Docs. 160-12, 160-19.) Neither declarant claims to have voluntarily taken non-compliant meal periods. (*Id.*) Thus, these declarations do not rebut the *Donohue* presumption. Even if these declarants did claim to have voluntarily taken non-compliant meal periods, the anecdotal experiences of this small proportion of the

putative class is not sufficient to rebut the *Donohue* presumption—particularly when they are all currently employed by the Defendant. *See Kurihara v. Best Buy Co*., Inc., 2007 WL 2501698 at \*10 (N.D. Cal. 2007) (a defendant's "selective sampling of employee" declarations and data are "insufficient to inject fatal uncertainty into the question of liability"). Courts have recognized that "litigation-driven" declarations of current employees—who have every incentive to provide their employers with helpful declarations so as not to endanger their job security or their continued advancement in the company—are "inherently suspect" and should be discounted. *In re Wells Fargo Home Mortgage Overtime Litig*., 268 F.R.D. 604, 613 (N.D. Cal. 2010).

**(a)     Defendant Has Not Shown a Significant Number of Employees Voluntarily Chose to Take Non-Compliant Meal Breaks**

Defendant has failed to present the evidence that *Allison* requires to rebut the *Donohue* presumption. In *Allison*, Defendant "submitted [employees'] deposition testimony reflecting idiosyncratic reasons for noncompliant meal periods. For example, many class members testified that they 'preferred' to take their first meal break after the fifth hour because they got hungry later, or in circumstances when they had 'a little break prior to clocking out for lunch,' or because it made 'the shifts go by faster.'" 112 Cal. App. 5th at 544 (2025). Here, however, neither of Defendant's two class-member declarants state that they voluntarily took noncompliant meal periods for any reason. Instead, they all state that they received compliant meal periods[4] (*e.g.,* Doc. 160-19, ¶¶ 17–26) or that when they did not, they received meal period premiums (*e.g.,* Doc. 160-12, ¶ 20.)

This case is actually analogous to *Santillan v. Verizon Connect, Inc.*, which *Allison* distinguished itself from on this very basis. *Allison*, 112 Cal. App. 5th at 545. In *Santillan,* the court examined whether the employer had rebutted the *Donohue* presumption and determined that it did not because none of the declarations submitted by the employer actually stated that the non-compliant meal periods were taken voluntarily. *Santillan*, 2022 WL 4596574, at \*13. The same is true here. Defendant cannot rebut the *Donohue* presumption and establish that an individualized analysis of whether Meal Period Premium Class members voluntarily took non-compliant meal periods is necessary without providing any evidence, let alone substantial evidence, that Meal Period Premium Class members voluntarily took non-compliant meal periods.

**(b)     Defendant Has Not Provided Any Evidence that It Cannot Present Its Defense Through Survey or Representative Testimony**

Even if Defendant had presented evidence that may rebut the *Donohue* presumption, Defendant has not

---

10

1    established that individualized issues would predominate over common issues. *Donohue*, itself, stated that

2        Employers can rebut the presumption by presenting evidence that employees were
3        compensated for noncompliant meal periods or that they had in fact been provided compliant
    meal periods during which they chose to work. ***Representative testimony, surveys, and***
4    ***statistical analysis, along with other types of evidence are available as tools to render***
    ***manageable determinations of the extent of liability.***

5    *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 77 (2021) (citations omitted) (emphasis added).

6        Defendant has also not provided any evidence, such as expert testimony, that representative testimony,

7    surveys, statistical analysis, or any other type of evidence cannot be used to present evidence rebutting the

8    *Donohue* presumption.[5] *Donohue* would have no practical effect if an employer could defeat class certification

9    of a meal premium claim by simply asserting—without any evidence—that an individualized inquiry is needed

10    to determine whether the violations that appear in the time records were the result of employee choice.

11            **4.      The Rest Break Premium Subclass Should Also Be Certified**

12        Plaintiffs' Rest Break Premium Subclass should be certified. Defendant does not dispute that under

13    *Safeway, Inc. v. Super. Ct* (*Esparza*), 238 Cal. App. 4th 1138, 1153 (2015) a class may be certified based on an

14    employer's total failure to pay break premiums when required. Given the admissions obtained through discovery

15    that ***Defendant never paid any rest break premiums whatsoever***, and Defendant's failure to proffer any

16    evidence to the contrary in support of its Opposition, the Court has sufficient factual evidence of the existence of

17    an unlawful common policy—or lack thereof—warranting class treatment. *See id.* (Defendant's total failure to

18    pay any rest break premiums at all, constitutes an unfair business practice in violation of the Unfair Competition

19    Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")); *see also Bradley*, 211 Cal. App. 4th 1129, 1149-50

20    (2012) (there is no material distinction between an express non-compliant meal and rest break policy and the lack

21    of one); *Faulkinbury*, 216 Cal. App. 4th at 237 (holding the lack of a rest break policy could be determined on a

22    class-wide basis because "*lack* of a meal/rest break policy and the uniform failure to authorize such breaks are

23    matters of common proof") (emphasis added). In granting certification, the Court in *Safeway* did not require, as

24    Defendant contends should be required, that plaintiffs must also prove rest break violations were due to a

25    systematic company policy. Nonetheless, Plaintiffs' understaffing theory, presented above details one such

26    methodology using common evidence (*e.g.,* the use of time records to show understaffing). Contrary to

27          [5] Defendant's expert, who has no training or experience in survey design, identifies alleged flaws in
28    Plaintiffs' expert's proposed survey but notably does not claim that a survey could not be conducted that
would allow Defendant to present its affirmative defenses. (*See generally* Doc. 160-21.)

Defendant's assertion, Plaintiffs' Rest Break Premium Subclass seeks restitution available under the UCL, Cal. Bus & Prof. Code § 17200, et seq., for the loss of class members' right to rest break premiums Labor Code section 226.7 requires (See Plaintiffs' Notice of Motion). Thus, Plaintiffs' theory of liability is identical to that of the plaintiff in *Safeway*, in which the Court granted certification.

### 5.    The Business Expense Subclass Should Be Certified

Defendant does not dispute the substantial evidence proffered in support of Plaintiffs' Motion that all employees are required to use their personal mobile devices for work-related tasks, including downloading mobile applications, and that, as a matter of company policy, Defendant failed to reimburse employees fully for their necessary cellphone use and data. In response, Defendant merely points to a written policy that says employees may request reimbursement. However, under California law an employee does not have to request reimbursement to trigger an employer's reimbursement obligation. Rather, if an employer "knows or has reason to know that the employee has incurred a reimbursable expense. . . it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Stuart v. RadioShack*, 641 F.Supp.2d 901, 903-04 (N.D. Cal. 2009). Given that all employees were required to use their phones, reimbursement should have been automatic. Instead, Defendant only provided reimbursement to a select handful of class members that were required to travel from store to store.

Finally, Defendant lazily claims that Plaintiffs had some obligation to produce their phone records to Defendant, regardless whether Defendant sought their production in discovery. Plaintiffs' theory does not rely on phone records. Rather, Defendant's 30(b)(6) witness admitted that Defendant required employees to download various mobile applications on their personal phones as a matter of policy. At most, class members' personal cellphone records would establish the reimbursement amount they are owed, which is a damages issue. And damages issues do not defeat class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir.2013). Even when a "wide divergence on the question of damage calculations for proposed class members" is expected, the divergence did not defeat a finding of predominance under Rule 23(b)(3). *See Gripenstraw v. Blazin' Wings, Inc.*, 2013 WL 6798926, *8–9, (E.D.Cal. Dec. 19, 2013).

### 6.    The Derivative Subclasses Should Be Certified

It is axiomatic that final pay, wage statement, and UCL claims are derivative of claims for failure to pay wages. *E.g., Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 117, (2022) ("missed-break premium pay

1   constitutes wages for purposes of Labor Code section 203, and so waiting time penalties are available under that

2   statute if the premium pay is not timely paid"); *Id.* at 121 ("we hold that an employer's obligation under Labor

3   Code section 226 to report wages earned includes an obligation to report premium pay for missed breaks");

4   *Westfall v. Ball Metal Beverage Container Corp.*, No. 216CV02632KJMGGH, 2019 WL 202677, at *1 (E.D.

5   Cal. Jan. 15, 2019) ("wage statement and waiting time penalties claims are derivative of the meal and rest break

6   claims as a matter of law") (citing *Taylor v. AlliedBarton Sec. Servs. LP*, No. 1:13–CV–01613–AWI, 2014 WL

7   1329415, at *8 (E.D. Cal. Apr. 1, 2014) (accurate wage statement claim derivative of rest and meal break claims)

8   and *McCowen v. Trimac Transportation Servs. (W.), Inc.*, 311 F.R.D. 579, 586 (N.D. Cal. 2015) (wage statement

9   and waiting time penalties claims derivative of rest and meal break claims)); *Arredondo v. Delano Farms Co.*,

10   301 F.R.D. 493, 545-46 (E.D. Cal. 2014) (noting that California Labor Code sections 203 and 226 claims are

11   "routinely considered derivative of the underlying state law claims upon which class certification is based," and

12   amending the certification order, which noted these claims but did not specifically discuss them in certifying

13   underlying subclasses). And Plaintiffs' Trial Plan explains how the final pay, wage statement, and UCL claims

14   are derivative of Plaintiffs' other claims. (Doc. 147-2 at 17:13–19:17.) Simply put, if it can be determined on a

15   class-wide basis that Defendant failed to pay any wages, those wages necessarily were not paid upon separation

16   or stated in the wage statements and thus there is no procedural bar to certifying the derivative claims.

17       In response to Plaintiffs' derivative claims, Defendant raises two common defenses that would apply to

18   the classes as a whole. First, Defendant argues that Plaintiffs must show that Defendant's conduct was willful in

19   order to establish a violation of Labor Code section 203(a). Similarly, Defendant argues that Plaintiffs must show

20   that Defendant's failure to provide accurate wage statements was "knowing and intentional" to establish a

21   violation of Labor Code section 226(e). Defendant does not even try to explain why either claim would require

22   an individualized analysis, nor could they. Rather, Defendant's arguments merely provide singular common

23   questions applicable to each derivative class, further underscoring that certification is appropriate. As these issues

24   are employer-focused inquiries, they necessarily do not require individualized analysis. *Sali v. Corona Reg'l*

25   *Med. Ctr,* 909 F.3d 996, 1011–12 (9th Cir. 2018) (reversing denial of class certification because "an employer-

26   focused inquiry…does not depend on individualized factual questions and is capable of class-wide resolution").

27   Plaintiffs Regular Rate, Off the Clock, Meal Break, Rest Break, and Business Expense classes are all based on

28   common policies/practices uniformly applied to subclass members that allegedly violate the law. If those

common policies/practices are illegal, they are illegal as to all subclass members and result in violations of sections 201 and 202 and 226(e) as to all.

**B.    The Claims of All Class Members Can Be Manageably Tried**

Plaintiffs have addressed Defendant's arguments in response to Plaintiffs' Trial Plan in Plaintiffs' Reply in Support of Trial Plan and the Supplemental Declaration of Amanda L. Scott, Ph.D, filed concurrently herewith.

**C.    Plaintiffs Are Adequate Class Representative of the Classes They Seek to Represent**

Defendant claims that Plaintiffs are inadequate based on 'gotcha' games played by defense counsel in deposition. Rather than directly asking Plaintiffs to identify their counsel by name, defense counsel went through a series of employees asking if Plaintiffs knew who the people were, mixing in the names of various attorneys who had served as Plaintiffs' counsel over the years.  It is unfortunate that due to employee turnover many of the attorneys that were originally assigned to this case no longer serve as Plaintiffs' counsel.  But Plaintiffs need not know every individual that has been identified as Plaintiffs' counsel to qualify as an adequate class representative. Besides, like most law firms, specific associates are responsible for communicating with clients so it would be unusual for clients to interact with every attorney assigned to work on their matter.

Defendant also singled out Plaintiff Camero, attacking his credibility based on deposition testimony related to his employment seven years ago. In one breath Defendant claims he lied about being a manager on his resume, and in the next breath they claim he has "an insurmountable conflict" because he was responsible for managing class members' breaks.  Well, which is it?  "Not all credibility problems derail a class action. Jeopardy to the represented class members must be "sharp."" *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d 996, 1015 (N.D.Cal.2010) (citation omitted) "Issues of credibility must be relevant to the litigation, show a conflict of interest, or be objectively confirmed." *Id.* "Even then relevant evidence of untrustworthiness or lack of personal integrity is 'but one factor' a court must consider." *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 215 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), and aff'd, 690 F. App'x 526 (9th Cir. 2017). That Camero once scheduled breaks for other class members does not present a conflict because unlike the authorities cited by Defendant where the plaintiffs' theories assigned partial responsibility for break violations to individual supervisors, Plaintiffs theories here are based on consistently applied policies and practices and time records that give rise to the rebuttable presumption of violations.  In these circumstances no conflict is present. *See Pena*, 305 F.R.D at 215 (finding no conflict was

1    sufficiently present where the plaintiff alleged a uniform policy that affected supervisors and subordinates

2    similarly); *see also Akaosugi v. Benihana Nat. Corp*., 282 F.R.D. 241, 254 (N.D. Cal. 2012) (same).

3            **D.**      **Plaintiffs' Counsel Are Adequate and Defendant's Accusations Are Unfounded**

4           Defendant accuses Plaintiffs' counsel of solicitation, claiming Plaintiffs both testified they were not

5    seeking lawyers when they were contacted by Plaintiffs' counsel. Defendant's claims are baseless. To the extent

6    Plaintiffs could not accurately recall the exact circumstances how they retained counsel during deposition, it is

7    likely because Defendant ***waited more than 5 years*** to take Plaintiffs' depositions. The fact is that Plaintiffs gave

8    their contact information to Plaintiff's counsel and specifically requested to talk to a lawyer. (Grant Decl., ¶ 3.)

9            **E.**      **The Scope of Plaintiffs' Proffered Evidence Is Sufficient**

10           Defendant makes the hollow assertion that Plaintiffs' proffered evidence is insufficient because it is not

11    sufficiently broad in temporal scope. But Defendant has not argued that there has been a change in policy or

12    practice that affects commonality, much less provided any evidence of such a change. At this stage, Plaintiffs

13    "need only show that there is a common contention capable of classwide resolution — not that there is a common

14    contention 'that will be answered on the merits in favor of the class.'" *Alcantar,* 800 F.3d at 1053.

15            **F.**      **Modification of the Scheduling Order Is Not a Bar to Class Certification**

16    Defendant argues that class certification should be denied entirely because discovery would have to be re-opened

17    and the trial date continued to accommodate Dr. Scott's proposed survey. But Dr. Scott's survey has nothing to

18    do with the Regular Rate, Meal Period Premium or Derivative Classes. And while Plaintiffs may use a survey

19    in its pursuit of the Meal Period Premium claim, it is not necessary to prove liability, which will be established

20    through Defendant's time records and the *Donohue* presumption. The only modification of the Scheduling

21    Order that would be necessary is to re-open discovery to allow Defendant's production of complete time and pay

22    records for the certified class members and to permit the Parties' data experts the opportunity to update their

23    reports with the additional data. This minor change to the scheduling order should not prevent class certification,

24    particularly when it was Defendant's refusal to produce the full time and pay records in advance of class

25    certification that necessitates the change. For the Off-the-Clock, Rest Break, and Business Expense classes,

26    which require the use of Dr. Scott's survey, discovery would have to be re-opened to permit Dr. Scott's survey,

27    which may be completed within three months of the Court's order — well in advance of the February trial.

28    ///

**III.        CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion for Class Certification in its entirety.


Dated: August 21, 2025                              Capstone Law APC

                                        By: */s/ Melissa Grant*
                                            Melissa Grant
                                            Bevin Allen Pike
                                            Daniel S. Jonathan
                                            Trisha K. Monesi
                                            Shealene P. Mancuso

                                            Attorneys for Plaintiffs Jennifer Brum and
                                            Michael Camero