UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JENNIFER BRUM, et al.,

Plaintiffs,

v.

MARKETSOURCE, INC.,

Defendant.

No.  2:17-cv-00241-DAD-JDP

ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

(Doc. No. 147)

This matter is before the court on plaintiffs' renewed motion for class certification.  (Doc. No. 147.)  On July 23, 2025, plaintiffs' motion was taken under submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 156.)  For the reasons explained below, the court will deny plaintiffs' motion without prejudice to its renewal.

**BACKGROUND**

On January 3, 2017, plaintiffs Jennifer Brum and Michael Camero filed a complaint initiating this wage and hour putative class action against defendants MarketSource, Inc. and Allegis Group, Inc.  (Doc. No. 1-1 at 5.)  That same day, defendants removed the action to this federal court pursuant to 28 U.S.C. §§ 1332 and 1441.  (Doc. No. 1 at 4.)  On March 29, 2024, the court adopted the assigned magistrate judge's findings and recommendations and denied plaintiffs' initial motion for class certification because some class members had signed arbitration

1

agreements and because plaintiffs failed to prove numerosity as to the one remaining sub-class. (Doc. No. 128.)  On October 9, 2025, the court granted defendant Allegis Group, Inc.'s unopposed motion for summary judgment and terminated defendant Allegis Group, Inc. from this action.  (Doc. No. 164.)

On June 30, 2025, plaintiffs filed the pending renewed motion for class certification. (Doc. No. 147.)  Plaintiffs propose the following class and sub-classes:

- Class:  All individuals employed by defendants in California as non-exempt, hourly paid employees who worked for MarketSource in a retail capacity at any time from January 3, 2013 through the date of class certification ("Class Period") and did not execute an arbitration agreement:

- Regular Rate Subclass:  All Class Members employed from January 3, 2013 to April 1, 2015 who earned a non-discretionary bonus and/or incentive payment during the same week they earned overtime wages.

- Off-the-Clock Subclass:  All Class Members required to attend off-the-clock meetings and/or conference calls from January 3, 2013, to the date of certification.

- Rest Break and Rest Break Premium Subclass:  All Class Members who worked at least one shift of three and one-half hours or more during the Class Period.

- Meal Break Premium Subclass:  All Class Members who worked at least one shift of more than five hours during the Class Period and recorded their time through Natural Insight.

- Business Expense Subclass:  All Class Members, excluding Field Service Representatives, employed by defendants from January 3, 2014, though the date of class certification.

- Final Pay Subclass:  All Class Members who ended their employment with defendants at any time from January 3, 2014, through the date of class certification.

- Wage Statement Subclass:  All Class Members who received at least one wage statement from January 3, 2016, though the date of class certification.

(*Id.* at 3.)

/////

/////

2

Plaintiffs propose that the court appoint both named plaintiffs as the representatives for the proposed class and each subclass. (*Id.*) Plaintiffs argue that the following theories of liability apply to each sub-class:

- Regular Rate Theory (Regular Rate Subclass): Defendant maintained a class-wide policy and practice of failing to factor in all non-discretionary bonuses and incentives into the regular rate of pay for purposes of calculating overtime earnings from January 3, 2013 through April 1, 2015.

- Off-the-Clock Theory (Off-the-Clock Subclass): Defendant has maintained a class-wide policy and practice of requiring employees to attend meetings and conferences outside their regularly scheduled shifts without compensation for the hours worked attending these meetings, inclusive of any unpaid travel time.

- Rest Break Understaffing Theory (Rest Break and Premium Subclass): Defendant has maintained a class-wide policy and practice of systematically understaffing its retail store locations and kiosks based on assigned sales volume, which prevents employees from taking rest breaks due to inadequate break coverage.

- Rest Break Premium Theory (Rest Break and Premium Subclass): Defendant has maintained a class-wide policy and practice of systematically failing to pay rest period premiums when required.

- Meal Break Premium Theory (Meal Break Premium Subclass): Defendant has maintained class-wide policies and practices of systematically failing to pay meal period premiums to employees using the Natural Insight timekeeping system when required.

- Business Expense Theory (Business Expense Subclass): Defendant has maintained a class-wide policy of requiring employees, excluding Field Service Representatives, to clock-in and out, communicate with other employees, including management, and download specific applications to use on their personal cellular phones but has failed to implement any policy or practice to reimburse employees for their cellular and data usage costs.

/////

3

- Final Pay Theory (Final Pay Subclass):  As a result of defendant's failure to pay employees all wages due during employment, including meal and rest break premiums, defendant has failed to timely pay all wages due and payable to employees upon separation of employment.

- Wage Statement Theory (Wage Statement Subclass):  As a result of defendant's failure to pay employees all wages due during employment, including meal and rest break premiums, defendant has failed to provide employees with complete and accurate wage statements.

- UCL Subclass:  Defendant's failure to pay employees all wages due during employment, including meal and rest break premiums, and failure to reimburse employees for necessary business expenses constitute unfair and unlawful business practices.

(Doc. No. 147-1 at 8–9.)

On August 11, 2025, defendant MarketSource, Inc. ("defendant") filed its opposition to the pending motion.  (Doc. No. 160.)  On August 21, 2025, plaintiffs filed their reply thereto.  (Doc. No. 162.)

**LEGAL STANDARDS**

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties— unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).  Federal Rule of Civil Procedure 23 governs class certification and imposes a two-step process in deciding whether a class may be certified.

First, Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *White v. Symetra Assigned Benefits Service Company*, 104 F.4th 1182, 1191 (9th Cir. 2024); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).  Second, when a putative class satisfies these four prerequisites, it may then proceed to show it also satisfies at least one of the provisions of Rule 23(b).  *See Hanlon v. Chrysler Corp.*, 150 F.3d

4

1011, 1022 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The party seeking class certification bears the burden of establishing conformity with this two-step process and must do so by producing facts that "affirmatively demonstrate" that class certification is warranted.  *Comcast*, 569 U.S. at 33.  Only after conducting a "rigorous analysis" of the produced facts and determining that they show compliance with Rule 23(a) and (b), may a district court certify a class.  *Id.* at 33–34; *see also Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 664 (9th Cir. 2022); *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b).").

**ANALYSIS**

The adequacy of representation Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Resolution of this issue requires the court to address the following questions:  "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).  "Adequacy of representation also depends on the qualifications of counsel."  *Sali*, 909 F.3d at 1007 (citation omitted).

Defendant argues that named plaintiff Camero has an insurmountable conflict that renders him an inadequate representative because he was in a supervisory position when employed by defendant, and in that position he directed other employees to take late breaks.  (Doc. No. 160 at 15.)  In reply, plaintiffs argue that although plaintiff Camero once scheduled breaks for other class members, this does not result in a conflict on his part where plaintiffs' theories of liability are based on consistently-applied policies and practices.  (Doc. No. 162 at 17.)

"The question whether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case."  *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  "Plaintiffs attempting representation of nonsupervisory employees by supervisory employees must offer evidence of

coextensive interests or at least allege the existence of a general . . . policy." *Id.* at 959 (cleaned up) (citation omitted). Where managers are involved in implementing the challenged policy, however, this raises a conflict sufficient to require denial of class certification. *Moussouris v. Microsoft Corp.*, No. 15-cv-01483-JLR, 2018 WL 3328418, at *29 (W.D. Wash. June 25, 2018) (finding that the class representative, Moussouris, had an insurmountable conflict of interest with the class because she had served as a manager implementing the purportedly discriminatory policies), *aff'd,* 799 F. App'x 459 (9th Cir. 2019) ("As a manager, Moussouris has a conflict of interest with both the putative class members who reported to her and the putative class members who never acted as a manager. . . . The district court did not abuse its discretion when it ruled that Appellants' proposed class did not meet the adequacy requirement as to the disparate treatment claims.").

Plaintiffs do not contest defendant's claim that named plaintiff Camero was involved in implementing the challenged policy regarding rest breaks. In the court's view, this raises serious concerns regarding the adequacy of representation, at least insofar as plaintiff Camero seeks to represent the Rest Break and Rest Break Premium Subclass. *See Kirola v. City & Cnty. of San Francisco*, No. 07-cv-03685-SBA, 2011 WL 996344, at *7 (N.D. Cal. Mar. 18, 2011) (In *Staton*, "[t]he Ninth Circuit agreed with the district court that those objecting to class certification had failed 'to identify a substantive issue for which there is a conflict of interest between two or more sets of employees.' Here, Ms. Fraguli has identified such a 'substantive issue,' i.e., the fact that she participated in the very behavior that is being challenged.") (citation omitted), *modified in part sub nom. Kirola v. City of San Francisco*, No. 07-cv-03685-SBA, 2011 WL 1330853 (N.D. Cal. Apr. 4, 2011).

Further, the class and sub-classes here do not distinguish between supervisory and non-supervisory employees, and plaintiffs offer no evidence as to the numbers of supervisory and non-supervisory employees in the class or sub-classes. *Moussouris*, 2018 WL 3328418, at *28 ("Moreover, class members were potentially 'in conflict with each other' because of the 'significant number of potential class members who are current or former managers.'") (quoting *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001)). Additionally, the

6

record currently before the court on class certification does not specify how many supervisory class members were involved in implementing the various challenged policies for their subordinates and fellow class members. *See, e.g.*, *Silva v. AvalonBay Cmtys., Inc.*, No. 15-cv-04157-JAK-PLA, 2016 WL 4251600, at *7 (C.D. Cal. Apr. 20, 2016) ("[T]his conflict arises because decision-making by supervisors is closely related to the ability of supervisees to take meal and rest breaks.").

This action is distinguishable from those in which district courts have certified classes that include supervisors and subordinates, because in those cases (1) the defendant offered no evidence that a plaintiff or class member supervisor implemented a challenged policy, and (2) the class member supervisors demonstrably had "no say in the challenged policies." *Moussouris*, 2018 WL 3328418, at *29; *see, e.g.*, *Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-cv-00333-EJD, 2018 WL 3753708, at *10 (N.D. Cal. Aug. 8, 2018) ("Plaintiff alleges that all class members, managerial or not, are subject to the same mandatory security check."); *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 210 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015) ("[T]hey were required to put on, take off, and clean protective equipment during mandated breaks and before and after shifts."), *aff'd,* 690 F. App'x 526 (9th Cir. 2017).  In contrast here (1) at least one supervisor who meets the class definition (named plaintiff Camero) was undisputedly involved in implementing at least one challenged policy, and (2) none of plaintiffs' theories of liability preclude supervisory class member involvement in the implementation of a challenged policy or even suggest that such involvement is unlikely.  According to plaintiffs, defendant's official policies, while facially compliant, did not translate to compliance in practice, either due to the practices of defendant supervisors, informal pressures on class members, or both. (Doc. No. 162 at 9.)  Where supervisors were making the pertinent decisions, it is unclear whether class member supervisors or non-class member supervisors were either making the decisions or implementing them, though it does appear that at least one individual who qualifies for the class, named plaintiff Camero, had a fair number of supervisory responsibilities that could implicate him and other such class member supervisors in the implementation of the challenged

7

policies. (*See* Doc. No. 147-1 at 10–11) (Plaintiff Camero "was employed as a nonexempt hourly Team Lead and his primary job duties included, without limitation, running the Target Mobile kiosk, supervising and training staff, sales to customers, filling out all administrative paperwork, etc."). Even where the culprit was informal pressure, plaintiffs do not clarify whether class member supervisors were involved in applying, permitting, or creating such pressure, for instance through "supervisi[on] and training [of] staff[.]" (*Id.*) More specifically:

- Regular Rate Subclass: It is unclear whether class member supervisors or non-class member supervisors made or implemented the decision not to factor in non-discretionary bonuses and incentives when calculating the regular rate of pay for purposes of calculating overtime.

- Off-the-Clock Subclass: Plaintiffs concedes that at least one supervisor was involved in implementing the policy challenged by the Off-the-Clock Subclass. (*See* Doc. No. 147-1 at 12) (arguing that "[o]ne employee complained that her supervisor informed her that she needed to take a conference call that lasted 49 minutes on her day off"). Whether this supervisor qualifies as a class member is not specified.

- Rest Break and Premium Subclass: Plaintiffs theorize that understaffing resulted in informal pressure on class members to skip rest breaks. However, as discussed above, plaintiffs admit that at least one supervisor who qualifies under the class definition, named plaintiff Camero, once scheduled non-compliant rest breaks.

- Meal Break Premium Subclass: It is unclear whether class member or non-class member supervisors were responsible to some degree for the failure to pay meal period premiums.

- Business Expense Subclass: It is unclear whether class member or non-class member supervisors failed to reimburse, or were involved in failing to reimburse, employees for their cellular and data usage.

- Final Pay Subclass, Wage Statement Subclass, and UCL Subclass: The theories of liability for these subclasses are derivative of other subclasses' theories of liability. Thus, to the same extent class member supervisors implemented those challenged policies, they are likewise implicated in these derivative claims.

The court finds that based upon the showing made in the pending renewed motion for class certification the potential conflicts discussed above preclude class certification because neither the named plaintiffs nor counsel can adequately represent class members with such diverging interests.[1] *See Moussouris*, 2018 WL 3328418, at \*29 ("[T]his conflict appears insurmountable.") (quoting *Donaldson*, 205 F.R.D. at 568).

**CONCLUSION**

For the reasons explained above,

1.     Plaintiffs' renewed motion for class certification (Doc. No. 147) is DENIED, without prejudice to its renewal;

2.     Plaintiffs shall file a notice specifying whether they intend to file a renewed motion for class certification within fourteen (14) days of the docketing of this order;

3.     Any renewed motion for class certification shall be filed within twenty-eight (28) days of the docketing of this order; and

3.     If plaintiffs decline to file a renewed motion for class certification, the parties are directed to meet and confer on their availability, and within fourteen (14) days of the docketing of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with several proposed dates for the rescheduling of a Final Pretrial Conference and Jury Trial in this action.

IT IS SO ORDERED.

Dated:   **March 2, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[1]  This is not to say that plaintiffs could not present evidence in a renewed motion for class certification establishing that class member supervisors were likely not involved in implementation of some or all of the alleged challenged policies.  On the other hand, if feasible, plaintiffs might also choose to limit class and sub-class definitions in order to avoid the issue altogether or propose limited definitions in the alternative.

9